SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Richard W. Berg v. Hon. Christopher J. Christie** (A-71/72-14) (074612)

**Argued March 14, 2016 – Decided June 9, 2016**

**LaVECCHIA, J., writing for a majority of the Court.**

In this appeal, the Court considers whether the 2011 suspension of State pension cost-of-living adjustments (COLAs), L. 2011, c. 78, contravened a term of the contract right granted under the earlier enacted "non-forfeitable right" statute, L. 1997, c. 113 (presently codified as N.J.S.A. 43:3C-9.5).

The Pension Adjustment Act (PAA) started the modern legislative provision of COLAs for public sector retirees. The PAA's initial reach was limited, granting adjustments only to those who retired before 1952, among other restrictions. COLAs were subject to annual appropriation by the Legislature and thus funded on a pay-as-you-go basis. As the cost of living rose, retirees who retired after 1952 watched their fixed incomes drop in real terms. The Legislature responded in the 1960s with a series of amendments to the COLA formula, culminating in 1969, when the Legislature expanded COLAs to cover all eligible retirees, and linked the COLA formula to the consumer price index (CPI). Over time, the Legislature took a series of steps to shift COLAs to a prefunded basis, recognizing that the pay-as-you-go funding scheme was fiscally untenable.

In 1997, the Legislature enacted the non-forfeitable-right statute. L. 1997, c. 113, § 5 (Chapter 113). Then, in 2011, as a part of comprehensive pension reform legislation, Chapter 78 suspended further COLAs, freezing the cost-of-living adjustment at the 2011 level for current and future qualifying retirees. L. 2011, c. 78, § 25. The suspension of State pension COLAs led to the complaint that commenced this action.

Retired government employees filed a complaint against various State defendants, alleging that plaintiffs had contractual, statutory, and constitutional rights to COLAs and seeking numerous forms of relief. A group of state and local employees and their labor unions (Intervenors) were granted leave to intervene and file a complant. On the State's motion, the trial court dismissed the two actions in their entirety. The court found Chapter 78 to be constitutional without examining or resolving the non-forfeitable-right statute. The court viewed the Debt Limitation Clause and the Appropriations Clause of the New Jersey Constitution as, in and of themselves, reserving to the Legislature the ability to make changes to the pension statutes.

Plaintiffs and Intervenors filed separate notices of appeal, which the Appellate Division consolidated. In a published opinion, the Appellate Division reversed the trial court's dismissal of the complaints, concluding that Chapter 113 created a protectable contract right that included COLAs. 436 N.J. Super. 220 (App. Div. 2014). The panel remanded for a contract-impairment analysis, which the trial court had not reached. The panel rejected plaintiffs' other arguments and found that certain of their claims were properly dismissed.

Plaintiff Charles Ouslander, a retired prosecutor, filed a petition for certification, and the State filed a cross-petition from the Appellate Division's judgment. The Court granted both applications. 222 N.J. 311 (2015).

**HELD**: To construe a statute as creating a contractual right, the Legislature's intent to limit the subsequent exercise of legislative power must be clearly and unequivocally expressed concerning both the creation of a contract as well as the terms of the contractual obligation. In this instance, proof of unequivocal intent to create a non-forfeitable right to yet-unreceived COLAs is lacking. The Legislature retained its inherent sovereign right to act in its best judgment of the public interest and to pass legislation suspending further COLAs.

1. The question before the Court is whether there is a contractual right to continued increased adjustment of public pension benefits. To find a contract created by statute means that the Legislature binds itself to a policy choice and surrenders the power of future elected representatives to cut back on that choice. Because the effect of finding a

1

statutory contract is so severe, only the clearest expression of statutory language and evidence of legislative intent for such creation will do. In Spina v. Consolidated Police and Firemen's Fund Commission, 41 N.J. 391 (1964), the Court explained that a contractual restriction on future legislative action "should be so plainly expressed that one cannot doubt the individual legislator understood and intended it." That standard has remained the benchmark in New Jersey for determining whether a contract has been created by statute. See Burgos v. State, 222 N.J. 175, 195 (2015), cert. denied, 136 S. Ct. 1156 (2016). State and federal courts across the country also have applied their variants of the "clear indication" standard in cases like this one -- legislative suspension or reduction of COLAs. In sum, courts historically have adhered to the clear indication standard, and it applies in this appeal. (pp. 18-25)

2. With the standard established, the Court turns to the statutes at issue in this appeal, beginning with a close examination of the non-forfeitable-right statute, L. 1997, c. 113, § 5. Using the Public Employees' Retirement System as an example, the Court examines the statutes of the individual retirement systems or funds to understand the benefits purportedly provided non-forfeitable protection. The relevant statutes define each system or fund as the means for providing the retirement allowance and other benefits under the provisions of that system's enabling act; they do not include reference to benefits authorized to be paid via other statutes or acts. Because the individual systems and funds define benefits as those made available only pursuant to their respective acts, the State urges the Court to find that COLAs are not part of the protected non-forfeitable right. The State notes that COLAs are not provided through the enabling acts or laws governing the specific retirement systems or funds, but rather are authorized and are provided by way of separate legislation -- the Pension Adjustment Act, N.J.S.A. 43:3B-1 to -10. Contrarily, plaintiffs argue that by using the term "benefits program" in the non-forfeitable-right statute, the Legislature melded the base pension benefit to the COLA. Because the Legislature specifically excluded medical benefits from the non-forfeitable right but did not exclude COLAs, plaintiffs think it unmistakable that COLAs fall under the umbrella of the benefits program. (pp. 25-35)

3. This is not an ordinary statutory interpretation case. The Court's task is not to determine which textually based argument is more likely than not the actual intent of the Legislature. Rather, to find a statutory contract that would have the effect of restricting subsequent legislative action on the subject, the Court must find unmistakable evidence of legislative intent to create a non-forfeitable right to COLAs. Fairly viewed, the parties' many arguments are reasonable. However, based on the substantive provisions of the retirement systems' or funds' laws referenced in the non-forfeitable-right statute, which detail the benefits receiving protection, and the absence of COLAs from those provisions, plaintiffs' arguments are insufficient. The plain language of the non-forfeitable-right statute does not surely embrace COLAS, as it must to satisfy Spina. To succeed, plaintiffs needed to demonstrate that the legislative intent to render future COLAs part of the non-forfeitable right conferred by Chapter 113 was unmistakable. From a textual standpoint, that high standard simply is not met here. (pp. 36-37)

4. Plaintiffs argue that legislative history reveals the unmistakable legislative intent to include COLAs under the protection of the non-forfeitable-right statute. But if there is ambiguity requiring resort to legislative history, one is already outside the realm of unmistakable clarity needed to find a statutory contract right. In this setting, any ambiguity spells failure for claims that the Legislature created a contractual right to COLAs. Even if the Court were to look at legislative history, evidence of such unmistakable intent is wanting there. Plaintiffs also contend that the history of COLAs supports the reasonable expectation that they were part and parcel of the singular pension benefit provided on a monthly basis to retirees or their beneficiaries. However, the history of COLAs in New Jersey shows that the Legislature granted COLAs as periodic exercises of legislative discretion separate and apart from the base pension. Therefore, the additional extrinsic evidence offered by plaintiffs does not further the argument that the Legislature acted with the required intent to include COLAs under the non-forfeitable-right statute. (pp. 38-46)

5. Finally, the Court rejects the alternative argument, raised by petitioner Ouslander, that equity prevents the State from terminating COLAs for those employees who retired prior to the enactment of Chapter 78. Because the language of the non-forfeitable-right statute does not guarantee COLAs, it necessarily follows that the retirees could not reasonably rely on the statute's terms for purposes of a claim in equity. Petitioner's due process claims are unavailing for similar reasons. Those claims depend on the existence of a vested right; the continued receipt of COLAs cannot be categorized in that way based on the current text of the non-forfeitable-right statute. (pp. 46-49)

The judgment of the Appellate Division is **REVERSED**, and the trial court's judgment dismissing the complaints is **REINSTATED**.

**JUSTICE ALBIN, DISSENTING**, expresses the view that the pension statutes at issue are clear and unambiguous, and guarantee COLAs for retired public employees. Justice Albin believes that, because the cost-of-living adjustment was contained in laws "governing the retirement system or fund" and not subject to any exclusion in the non-forfeitable-right statute, plaintiffs are entitled to COLAs as a part of their full pension benefits.

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.**

RICHARD W. BERG, ROBERT J.
BRASS, THOMAS CANNAVO,
MELAINE B. CAMPBELL, LARRY
ROBERT ETZWEILER, KATHY
FLICKER, ARNOLD GOLDEN,
CHARLES GRINELL, TONI A.
HENDRICKSEN, HAROLD
KASSELMAN, SUSAN LOTHIAN,
STEPHEN H. MONSON, MARTIN C.
MOONEY, SR., BRIAN
MULHOLLAND, ANNE C. PASKOW,
SHARYN PEIFFER, SAMUEL REAL,
JR., GREGORY J. SAKOWICZ,
SUSAN W. SCIACCA, WILLIAM H.
SCHMIDT, FRED SCHWANWEDE,
JOHN J. SMITH, DEBRA STONE,
SHERI TANNE, AND JACK L.
WEINBERG,

     Plaintiffs-Respondents,

        and

CHARLES OUSLANDER,

     Plaintiff-Appellant
     and Cross-Respondent,

        and

NEW JERSEY EDUCATION
ASSOCIATION, NEW JERSEY STATE
POLICEMEN'S BENEVOLENT
ASSOCIATION, INC.,
COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO, NEW JERSEY
FRATERNAL ORDER OF POLICE,
NEW JERSEY STATE

FIREFIGHTERS' MUTUAL BENEVOLENT ASSOCIATION, PROFESSIONAL FIREFIGHTERS ASSOCIATION OF NEW JERSEY, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 1, AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 73, AFL-CIO, AMERICAN FEDERATION OF TEACHERS NEW JERSEY STATE FEDERATION, AFL-CIO, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO & CLC, LOCAL 194, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO, LOCAL 195, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO & CLC, LOCAL 200, PROBATION ASSOCIATION OF NEW JERSEY, NEWARK FIREFIGHTERS UNION, MORRIS COUNCIL NOS. 6 AND 6A, NJCSA IFPTE, AFL-CIO, JERSEY CITY POLICE OFFICERS BENEVOLENT ASSOCIATION, CAMDEN COUNTY COUNCIL #10, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 97, BELLEVILLE PBA LOCAL 28, NEW JERSEY ASSOCIATION OF SCHOOL ADMINISTRATORS, NEW JERSEY PRINCIPALS AND SUPERVISORS ASSOCIATION, NEW JERSEY ASSOCIATION OF SCHOOL BUSINESS OFFICIALS, NEW JERSEY RETIREES' EDUCATION ASSOCIATION, TRANSPORT WORKERS UNION LOCAL 225, NEW JERSEY SUPERIOR OFFICERS LAW ENFORCEMENT ASSOCIATION,

2

ATLANTIC CITY WHITE COLLAR
PROFESSIONAL ASSOCIATION,
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 210,
ATLANTIC CITY SUPERIOR
OFFICERS ASSOCIATION, PETER
BURKHALTER, DEE TRUCHON,
GEORGE O'BRIEN, THOMAS
TEVLIN, ROBERT BROWER,
ROSEMARIE JANKOWSKI, IRIS J.
ELLIOTT, KENNETH D. KING,
FRANK ELMER HICKS, WILLIAM A.
PARKER, BRAD FAIRCHILD,
DWIGHT COVALESKIE, ANTHONY F.
WIENERS, GARY SOUSS, WILLIAM
LAVIN, CHARLES WEST, MARIAN
LEZGUS, MELANIE HAFDELIN,
STEVEN ENGRAVALLE, CINDY
BARR-RAGUE, DOMINICK MARINO,
JOHN J. GEROW, JANET S.
ZYNROZ, ALFRED CRESCI, RAE C.
ROEDER, MARYANN PIUNNO SMITH,
MARYANN MESICS, DENNIS
REITER, ANTHONY MISKOWSKI,
VINCENT KAIGHN, WILLIAM S.
BAUER, JR., MICHAEL
CALABRESE, and DEBORAH
JACOBS,

       Plaintiffs/Intervenors-
       Respondents,

          v.

HON. CHRISTOPHER J. CHRISTIE,
HON. KIM GUADAGNO, SECRETARY
OF STATE OF THE STATE OF NEW
JERSEY, DIRECTOR, DIVISION OF
PENSIONS, BOARD OF TRUSTEES,
PUBLIC EMPLOYEES' RETIREMENT
SYSTEM, TREASURER, STATE OF
NEW JERSEY AND STATE OF NEW
JERSEY,

3

Defendants-Respondents
and Cross-Appellants.

_____

MICHAEL DELUCIA, PATRICIA
DELUCIA, ROBERT C. BROWN, AND
ANNE K. BROWN,

     Plaintiffs,

        v.

STATE OF NEW JERSEY
DEPARTMENT OF THE TREASURY,
DIVISION OF PENSIONS AND
BENEFITS,

     Defendants.


> Argued March 14, 2016 – Decided June 9, 2016
>
> On certification to the Superior Court, Appellate Division, whose opinion is reported at 436 N.J. Super. 220 (App. Div. 2014).
>
> Jean P. Reilly, Assistant Attorney General, argued the cause for respondents and cross-appellants (Robert Lougy, Acting Attorney General of New Jersey, attorney; Mr. Lougy, Ms. Reilly, and Kevin R. Jespersen, Assistant Attorney General, of counsel; Ms. Reilly, John P. Bender, Assistant Attorney General, Amy Chung, David M. Reap, and Matthew T. Kelly, Deputy Attorneys General, on the briefs).
>
> Charles M. Ouslander argued the cause for appellant and cross-respondent pro se.
>
> Daniel Louis Grossman argued the cause for respondents Richard W. Berg, Robert J. Brass, Thomas Cannavo, Melaine B.

4

Campbell, Larry Robert Etzweiler, Kathy Flicker, Arnold Golden, Charles Grinell, Toni A. Hendricksen, Harold Kasselman, Susan Lothian, Stephen H. Monson, Martin C. Mooney, Sr., Brian Mulholland, Anne C. Paskow, Sharyn Peiffer, Samuel Real, Jr., Gregory J. Sakowicz, Susan W. Sciacca, William H. Schmidt, Fred Schwanwede, John J. Smith, Debra Stone, Sheri Tanne, and Jack L. Weinberg.

Ira W. Mintz argued the cause for respondents (Weissman & Mintz, attorneys for Communications Workers of America, AFL-CIO, American Federation of State, County and Municipal Employees, Council 73, AFL-CIO, International Federation of Professional and Technical Engineers, AFL-CIO & CLC, Local 194, International Federation of Professional and Technical Engineers, AFL-CIO & CLC, Local 200, Peter Burkhalter, Dee Truchon, Rae C. Roeder, Maryann Piunno Smith, Maryann Mesics, Dennis Reiter, Anthony Miskowski, Vincent Kaighn, William S. Bauer, Jr., Michael Calabrese, and Deborah Jacobs; Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys for New Jersey Education Association, New Jersey Retirees' Education Association, New Jersey State Policemen's Benevolent Association, Inc., American Federation of State, County and Municipal Employees, Council 1, AFL-CIO, Belleville PBA Local 28, George O'Brien, Rosemarie Jankowski, Iris J. Elliot, William A. Parker, Anthony F. Wieners, Gary Souss, Marian Lezgus, and Melanie Hafdelin; Markowitz and Richman, attorneys for New Jersey Fraternal Order of Police; Craig S. Gumpel, attorney for New Jersey State Firefighters' Mutual Benevolent Association of New Jersey, Newark Firefighters Union, Morris

5

Council Nos. 6 and 6A, NJCSA, IFPTE, AFL-CIO, Thomas Tevlin, Robert Brower, William Lavin, and Charles West; Mets Schiro & McGovern, attorneys for Professional Firefighters Association of New Jersey, American Federation of Teachers New Jersey Federation, AFL-CIO, International Brotherhood of Teamsters Local 97, Dominick Marino, and John J. Gerow, Oxfeld Cohen, attorneys for International Federation of Professional and Technical Engineers, AFL-CIO & CLC, Local 195; Spear Wilderman, attorneys for Camden County Council #10; Robert M. Schwartz, attorney for New Jersey Principals and Supervisors Association, Janet S. Zynroz, and Alfred Cresci; O'Brien, Belland & Bushinsky, attorneys for Transport Workers Union Local 225, New Jersey Superior Officers Law Enforcement Association, Atlantic City White Collar Professional Association, International Brotherhood of Electrical Workers Local 210, and Atlantic City Superior Officers Association; Maria M. Lepore, attorney for New Jersey Association of School Administrators, Kenneth D. King, and Steven Engravalle; Sciarrillo, Cornell, Merlino, McKeever & Osborne, attorneys for New Jersey Association of School Business Officials, Frank Elmer Hicks, and Cindy Barr-Rague; Daniel J. Zirrith, attorney for Probation Association of New Jersey and Dwight Covaleskie; Detzky and Hunter, attorneys for Jersey City Police Officers Benevolent Association; Mr. Mintz, Kenneth I. Nowak, Edward M. Suarez, Jr., and Flavio L. Komuves, on the joint briefs).

Anthony M. Rainone submitted a brief on behalf of amicus curiae Former New Jersey State Troopers Association, Inc.

(Brach Eichler, attorneys; Mr. Rainone and Lucas A. Markowitz, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Part of comprehensive pension reform legislation, Chapter 78 of the Laws of 2011 suspended State pension cost-of-living adjustments (COLAs). L. 2011, c. 78. In this appeal, we consider whether that suspension contravened a term of the contract right granted under the earlier enacted "non-forfeitable right" statute. See L. 1997, c. 113 (presently codified as N.J.S.A. 43:3C-9.5).

Qualifying members of the State's public pension systems or funds were granted "a non-forfeitable right to receive benefits as provided under the laws governing the retirement system or fund." N.J.S.A. 43:3C-9.5(b). By codifying that "non-forfeitable right to receive benefits," the Legislature provided that the "benefits program, for any employee for whom the right has attached, cannot be reduced." N.J.S.A. 43:3C-9.5(a). That legislative enactment underscored the view that a public employee's pension -- a benefit accrued through many years of faithful public service -- represented earned compensation, not a gratuity that would be revoked or reduced without cause. See N.J. Educ. Ass'n v. State, 412 N.J. Super. 192, 216 (App. Div.), certif. denied, 202 N.J. 347 (2010); see also Uricoli v. Bd. of Trs., Police & Firemen's Ret. Sys., 91 N.J. 62, 73 (1982)

7

(recognizing that "[p]ublic pensions provide public employees with employment stability and financial security").

Whether COLAs are part of the "benefits program" protected by N.J.S.A. 43:3C-9.5 depends on whether the Legislature, in enacting N.J.S.A. 43:3C-9.5(a) and (b), intended to create a contractual right to COLAs. To construe a statute as creating a contractual right, the Legislature's intent to limit the subsequent exercise of legislative power must be clearly and unequivocally expressed concerning both the creation of a contract as well as the terms of the contractual obligation.

In this instance, proof of unequivocal intent to create a non-forfeitable right to yet-unreceived COLAs is lacking. Although both plaintiff retirees and the State advance plausible arguments on that question, the lack of such unmistakable legislative intent dooms plaintiffs' position. We conclude that the Legislature retained its inherent sovereign right to act in its best judgment of the public interest and to pass legislation suspending further COLAs. Having determined that there is no contract violation, and because the additional arguments advanced by plaintiffs are not meritorious, we must respect the legislative choice and reverse the Appellate Division's judgment.

I.

8

Because "[t]he legal issues must be viewed realistically against the story of these pension plans," Berg v. Christie, 436 N.J. Super. 220, 229 (App. Div. 2014) (quoting Spina v. Consol. Police & Firemen's Pension Fund Comm'n, 41 N.J. 391, 393 (1964)), the Appellate Division's opinion set forth a necessary and comprehensive account of the structure of the pension funds, the Pension Adjustment Act, and the non-forfeitable-right statute, see id. at 230-43. We need not repeat that thorough compilation here. For purposes of commencing our review, we summarize the legislative activity that led up to the issue at the heart of this appeal: whether the non-forfeitable right to receive benefits covers COLAs.

The Pension Adjustment Act (PAA), L. 1958, c. 143, started the modern legislative provision of COLAs for public sector retirees. The Legislature took that action to meet the financial need of retirees because, by the late 1950s, many former public employees -- "retired on pensions based on the salary levels of many years ago" -- faced financial hardship as they watched the purchasing power of their pensions diminish over the years. Sponsor's Statement to Assembly No. 367 (1958). But the PAA's initial reach was limited, granting adjustments only to those who retired before 1952 and only to the first $480 of a retiree's pension. L. 1958, c. 143, §§ 2, 3. COLAs were

9

subject to annual appropriation by the Legislature and thus funded on a pay-as-you-go basis.  L. 1958, c. 143, §5.

As the cost of living continued to rise, and retirees who retired after 1952 watched their fixed incomes drop in real terms, the Legislature again responded to economic conditions. See L. 1961, c. 144; L. 1964, c. 198; see also Sponsor's Statement to Assembly No. 559 (1961).  More retirees were brought into the fold, and the amount of the pension benefit subject to COLAs increased, when the COLA formula was amended in 1961 and again in 1964.  See L. 1961, c. 144, §§ 1, 2; L. 1964, c. 198, § 1.

A major change came in 1969, when COLAs were expanded to cover all eligible retirees.  See L. 1969, c. 169, §§ 1, 2. Moreover, the Legislature linked the COLA formula to the consumer price index (CPI).  L. 1969, c. 169, §§ 1, 5.

With all retirees receiving COLAs, and with COLAs tied to the consumer price index, the annual appropriation needed to cover that cost gradually increased in turn.  In a series of legislative steps, COLAs for the pension funds shifted to a prefunded basis.  See L. 1987, c. 385, § 2 (Teachers' Pension and Annuity Fund (TPAF)); L. 1989, c. 204, § 7 (Police and Firemen's Retirement System (PFRS)); L. 1990, c. 6, § 2 (Public Employees' Retirement System (PERS)); L. 1992, c. 41, § 10 (Judicial Retirement System (JRS)); L. 1992, c. 41, § 30 (State

10

Police Retirement System (SPRS)).  The Legislature took those steps in recognition that the pay-as-you-go funding scheme was proving fiscally untenable.  See Sponsor's Statement to S. No. 665 (1990) (recognizing that state employer's liability for COLAs was "growing rapidly" and that "[i]f steps are not taken soon to recognize and provide reserve funding for this liability, a severe fiscal crisis could develop in the future").  COLAs are presently paid by the five major retirement systems, "funded as employer obligations in a similar manner to that provided for the funding of employer obligations for the retirement benefits provided by the retirement system."  See, e.g., L. 1990, c. 6, § 2 (PERS).  Two funds -- the Prison Officers' Pension Fund and the Consolidated Police and Firemen's Pension Fund -- remain funded on a pay-as-you-go basis.  See N.J.S.A. 43:3B-4a (exempting TPAF from pay-as-you-go funding method); N.J.S.A. 43:3B-4.2 (exempting PFRS); N.J.S.A. 43:3B-4.3 (exempting PERS); N.J.S.A. 43:3B-4.4 (exempting JRS); N.J.S.A. 43:3B-4.5 (exempting SPRS).

In 1997, the Legislature enacted the non-forfeitable-right statute.  L. 1997, c. 113, § 5 (Chapter 113).  Then, in 2011, Chapter 78 suspended further COLAs, freezing the cost-of-living adjustment at the 2011 level for current and future qualifying retirees.  L. 2011, c. 78, § 25.  That brings us to the complaint that commenced this action.

11

II.

Richard Berg and twenty-five other retired government employees[1] filed a complaint against the Governor, the Secretary of State, the Director of the Division of Pensions, the PERS Board of Trustees, the State Treasurer, and the State (collectively the State). The complaint alleged that plaintiffs had contractual, statutory, and constitutional rights to COLAs and sought numerous forms of relief, including "a mandatory injunction ordering defendants to pay plaintiffs the COLAs that were abrogated by" Chapter 78 and "monetary damages equal to the COLAs that were abrogated by" Chapter 78. Plaintiffs' complaint alleged that Chapter 78's freeze of COLAs constituted a breach of contract and violated the Contract and Due Process Clauses of the Federal and State Constitutions.

The State filed a motion to dismiss for failure to state a claim, and plaintiffs filed a motion for summary judgment. Prior to the resolution of those motions, a group of state and local employees, both active and retired, and labor unions that represent them (Intervenors) filed a motion to intervene, which the trial court granted. Intervenors thereafter filed a complaint, adding claimed violations of the Contract Clause and Due Process as well as equitable estoppel.

---

[1] Per joint stipulation, it is undisputed that all of these plaintiffs retired prior to 2011.

12

The trial court converted the State's motion to dismiss into a motion for summary judgment and granted the State's motion, dismissing the two actions in their entirety. The court found Chapter 78 to be constitutional without examining or resolving the non-forfeitable-right statute. The court viewed the Debt Limitation Clause and the Appropriations Clause of the New Jersey Constitution as, in and of themselves, reserving to the Legislature the ability to make changes to the pension statutes. See N.J. Const., art. VIII, § II, ¶ 3; N.J. Const., art. VIII, § II, ¶ 2.

Plaintiffs and Intervenors filed separate notices of appeal, which the Appellate Division consolidated.[2] In a published opinion, the Appellate Division reversed the trial court's dismissal of the complaints. Berg, supra, 436 N.J. Super. at 229. At bottom, the panel concluded that Chapter 113 created a protectable contract right that included COLAs. Id. at 259.

In reaching its conclusion, the panel noted initially that there was a tension between, on the one hand, the principle of statutory construction that pension statutes are remedial legislation and, on the other, well-recognized case law

---

[2] Retired prosecutor Charles Ouslander filed a notice that he was proceeding pro se. Where necessary, his arguments are separately identified.

expressing judicial hesitancy to find a contract created by a statute. Id. at 250. However, the panel concluded that the non-forfeitable-right statute created a protectable contractual right that included COLAs. Id. at 259. The panel examined (1) the text of Chapter 113, which expressly excluded medical benefits from the definition of the non-forfeitable right but did not mention COLAs in that express exception, id. at 249; (2) two forms of legislative history, (a) a transcript from a legislative hearing that preceded enactment of Chapter 113, and (b) a Sponsor's Statement that tracked the bill's language specifically excluding medical benefits, id. at 251-253; and (3) a compiled history of New Jersey's COLA statutes, which the panel regarded as having the effect of rendering COLAs an integral part of the pension benefit, id. at 255-56.

Having determined that the non-forfeitable-right statute created a contractual right to receive pension benefits that included COLAs, the panel viewed as no impediment the Debt Limitation or Appropriations Clauses of the New Jersey Constitution. Id. at 246. The panel stated that the funds initially necessary to address plaintiffs' claims could come from monies presently held by the respective systems and funds and would not require payment through a State appropriation. Ibid. The panel added that those constitutional provisions would require analysis when a court-ordered State appropriation

14

would be triggered.  Ibid.  In the end, having found the existence of a contract right, the panel reversed the trial court's dismissal of the action and remanded for a contract-impairment analysis, which the trial court had not reached.  Id. at 263.

Although it had no impact on the State Contract Clause analysis, the panel found that plaintiffs' Federal Contract Clause claims were properly dismissed.  Id. at 247-48. Plaintiffs' other claims were rejected, as those claims "recycl[ed] arguments that were litigated and decided adversely to the intervenor-plaintiffs in . . . prior state and federal lawsuits."  Id. at 247.

Ouslander filed a petition for certification, contending that, contrary to the holding of the Appellate Division, the suspension of COLAs implicates the Due Process Clause and invokes the doctrine of equitable estoppel.  He also argues that the Appellate Division improperly dismissed his Federal Contract Clause claim on sovereign immunity grounds, because the State (1) is not protected from constitutional claims, and (2) alternatively, waived its immunity.  The State filed a cross-petition from the Appellate Division's judgment.  We granted both applications.  222 N.J. 311 (2015).  The parties' arguments are refined versions of their presentations to the Appellate Division; we address them in the course of this opinion.

15

III.

The Contract Clause states, "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. New Jersey's Constitution includes a similar guarantee that "[t]he Legislature shall not pass any . . . law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." N.J. Const. art. IV, § 7, ¶ 3; see also Burgos v. State, 222 N.J. 175, 193 (2015), cert. denied, __ U.S. __, 136 S. Ct. 1156, 194 L. Ed. 2d 174 (2016); Fid. Union Tr. Co. v. N.J. Highway Auth., 85 N.J. 277, 299 (1981) (noting that United States and New Jersey Constitutions provide "parallel guarantees").

Contract impairment claims brought under either constitutional provision entail an analysis that first examines whether a change in state law results in the substantial impairment of a contractual relationship and, if so, then reviews whether the impairment nevertheless is "reasonable and necessary to serve an important public purpose." U.S. Tr. Co. of N.Y. v. New Jersey, 431 U.S. 1, 25, 97 S. Ct. 1505, 1519, 52 L. Ed. 2d 92, 112 (1977); see also Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 546-47 (2013) (expressing same). The first step in that analysis involves three inquiries: (1) whether a contractual right

16

exists in the first instance; (2) whether a change in the law impairs that right; and (3) whether the defined impairment is substantial.  See Gen. Motors Corp. v. Romein, 503 U.S. 181, 186, 112 S. Ct. 1105, 1109, 117 L. Ed. 2d 328, 337 (1992).

In this appeal, there is disagreement on the very standard to be applied to whether a contract was formed that triggered a contractual right to ongoing COLAs.  We begin with that fundamental difference because it profoundly affects other issues and arguments advanced by the litigants.

Plaintiff retirees argue that the standard for reviewing pension legislation applies to this matter, the standard that is reserved for remedial legislation generally.  New Jersey courts have considered pension statutes to be remedial in character and thus deserving of a liberal construction and administration "in favor of the persons intended to be benefited thereby."  Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cty., 199 N.J. 14, 34 (2009) (quoting Geller v. N.J. Dep't of Treasury, Div. of Pensions & Annuity Fund, 53 N.J. 591, 597-98 (1969)).

On the other hand, relying on the general presumption against finding a contract that is created by a statute, see National R.R. Passenger Corp. v. Atchison, T. & S.F. Ry. Co., 470 U.S. 451, 465-66, 105 S. Ct. 1441, 1451-52, 84 L. Ed. 2d 432, 446 (1985), the State argues for a standard that requires

17

the Legislature to express unequivocal intent to contract. According to the State, that rigorous standard must be applied to find (1) the existence of a contract, and (2) the terms, or contours, of that contract as well. In our view, the State's position is unassailable.

The cases relied on by plaintiffs involved individual coverage issues under a public pension scheme. Those cases considered whether a public employee is entitled to receipt of a particular form of coverage under an existing statutory benefits program. There we employ a liberal bent in favor of coverage. But those cases are not of-a-kind to the question that is before the Court.

The question before us is whether there is a <u>contractual right</u> to continued increased adjustment of public pension benefits. The ramifications of a contract of that sort are harsh: To find a contract created by statute means that the Legislature binds itself to a policy choice and surrenders the power of future elected representatives to cut back on that choice. See <u>Pittman v. Chicago Bd. of Educ.</u>, 64 <u>F.</u>3d 1098, 1104 (7th Cir. 1995) (recognizing that "treat[ing] statutes as contracts would enormously curtail the operation of democratic government" and "creat[e] rights that could never be retracted"). In response, there is a rule -- in this state and elsewhere -- that holds that because the effect of finding a

18

statutory contract is so severe, only the clearest expression of statutory language and evidence of legislative intent for such creation will do.

That rigorous standard found expression by this Court in Spina v. Consolidated Police and Firemen's Fund Commission, 41 N.J. 391, 404-05 (1964), where the Court held that there must be an expression of unequivocal intent by the Legislature in order to conclude that the legislative branch was giving up its constitutional right and duty to enact laws by creating a statute by legislative vote. In Spina, the Court was confronted with an ailing local public pension fund and a legislative response thereto that increased both the length-of-service requirement and the minimum retirement age. Id. at 393. The question for this Court became "whether the Legislature is free to rewrite the formula for the good of all who have contributed." Id. at 402.

The Court acknowledged that the Legislature could, if it wished, impose contractual obligations on itself. Id. at 405. But to do so, the Court required a high bar for the creation of contracts by statute because contractual language in a statute cuts off the legislative prerogative to revisit its policy choices. Id. at 404-05. Writing for the Court, Chief Justice Weintraub explained that a contractual restriction on future legislative action "should be so plainly expressed that one

19

cannot doubt the individual legislator understood and intended it." Id. at 405 (emphasis added). That standard has remained the benchmark in this state for determining whether a contract has been created by statute. See N.J. Educ. Ass'n, supra, 412 N.J. Super. at 206-07 ("[A] statute will not be presumed to create private, vested contractual rights, unless the intent to do so is clearly stated. This is because the effect of such authorization is to surrender the fundamental legislative prerogative of statutory revision and amendment and to restrict the legislative authority of succeeding legislatures." (internal citations omitted)).

Just last term, looking to whether the Legislature created a contractual right under a different provision of Chapter 78, we asked whether the Legislature spoke "with sufficient clarity to evince intent to create a contract right." Burgos, supra, 222 N.J. at 194. We pointed to Spina and to the United States Supreme Court's cautionary direction to courts in Federal Contract Clause matters "not to presume that a statute creates private contract rights unless 'some clear indication' establishes the intent to do so." Id. at 195 (quoting Nat'l R.R. Passenger Corp., supra, 470 U.S. at 465-66, 105 S. Ct. at 1451, 84 L. Ed. 2d at 446).

Spina and Burgos did not break new ground but rather drew on a long-held presumption against contracts by statute. See

*Wis. & Mich. Ry. Co. v. Powers*, 191 U.S. 379, 386-87, 24 S. Ct. 107, 108, 48 L. Ed. 229, 231 (1903) ("[I]t is clear that we should require an adequate expression of an actual intent on the part of the state to set change of position against promise before we hold that it has parted with a great attribute of sovereignty beyond the right of change."); see also *Keefe v. Clark*, 322 U.S. 393, 397-98, 64 S. Ct. 1072, 1074, 88 L. Ed. 1346, 1349 (1944); *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79, 58 S. Ct. 98, 100, 82 L. Ed. 57, 62 (1937); *Stanislaus Cty. v. San Joaquin & King's River Canal & Irrigation Co.*, 192 U.S. 201, 208, 24 S. Ct. 241, 244, 48 L. Ed. 406, 410-11 (1904); *E. Saginaw Salt Mfg. Co. v. E. Saginaw*, 80 U.S. 373, 378-79, 20 L. Ed. 611, 614 (1872); *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 551, 9 L. Ed. 773, 825-26 (1837); *Shiner v. Jacobs*, 17 N.W. 613, 613 (Iowa 1883); *People ex rel. Cunningham v. Roper*, 35 N.Y. 629, 633 (1866); Jack M. Beermann, *The Public Pension Crisis*, 70 Wash. & Lee L. Rev. 3, 49 (2013) ("When determining whether a protected contractual relationship exists, courts are very sensitive to states' interest in remaining flexible and retaining their full regulatory authority. This judicial instinct in the United States dates back at least to the famous *Charles River Bridge* case [36 U.S. 420, 9 L. Ed. 773 (1837)] . . . .").

A searching inquiry is also applied in disputes involving the terms of a public contract by statute. Courts must "proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation." Nat'l R.R. Passenger Corp., supra, 470 U.S. at 466, 105 S. Ct. at 1452, 84 L. Ed. 2d at 446 (emphasis added); see also Robertson v. Kulongoski, 466 F.3d 1114, 1117 (9th Cir. 2006) (recognizing that "[t]he first sub-inquiry is not whether any contractual relationship whatsoever exists between the parties, but whether there was a contractual agreement regarding the specific . . . terms allegedly at issue" (alteration in original) (internal quotation marks omitted)), cert. denied, 550 U.S. 935, 127 S. Ct. 2262, 167 L. Ed. 2d 1092 (2007).

Faced with a legislative decision to reduce COLAs for public employee pensions, the United States Court of Appeals for the First Circuit recently applied its variant of the "clear indication" standard in a setting close to the one presented here. Me. Ass'n of Retirees v. Bd. of Trs. of Me. Pub. Emps. Ret. Sys., 758 F.3d 23 (1st Cir. 2014). The threshold for recognizing the creation of legislative contracts, the First Circuit explained, "has been referred to as the 'unmistakability doctrine.'" Id. at 29 (quoting Parker v. Wakelin, 123 F.3d 1, 5 (1st Cir. 1997), cert. denied, 523 U.S. 1106, 118 S. Ct. 1675,

22

140 L. Ed. 2d 813 (1998)).  The First Circuit noted that the unmistakability doctrine serves the twin goals of limiting the ability of contractual rights to curb the State's legislative power and avoiding "difficult constitutional questions" about the ability of one legislature to tie the hands of future legislatures.  Ibid. (quoting United States v. Winstar Corp., 518 U.S. 839, 875, 116 S. Ct. 2432, 2455, 135 L. Ed. 2d 964, 991 (1996) (plurality opinion)).

Taking its cue from National Railroad, the First Circuit applied the unmistakability doctrine to both the existence and terms of a statutory contract.  Id. at 30.  Accordingly, the panel assumed that Maine's pension statutes created at least some type of contractual obligation and "focus[ed] instead on whether COLAs [were] included in that obligation."  Ibid.  Because it was not "unmistakably clear" that COLAs fell under "the umbrella of benefits," and therefore beyond the reach of legislative amendment, the First Circuit concluded that the retirees' Contract Clause argument failed.  Id. at 31.

Courts across the country have applied the unmistakability standard, or a similarly worded test for such clarity of expression, in cases like this one -- legislative suspension or reduction of COLAs.  See, e.g., Am. Fed'n of Teachers -- N.H. v. State, 111 A.3d 63, 69 (N.H. 2015) ("Recognizing that the principal function of a legislature is not to make contracts,

23

but to make laws that establish the policy of the state, we recently adopted the unmistakability doctrine." (internal quotation marks omitted)); Justus v. State, 336 P.3d 202, 208-09 (Colo. 2014) ("[I]t is presumed that the legislature did not intend to bind itself contractually and that the legislation was not intended to create a contractual right unless there is a clear indication of the legislature's intent to be bound.").

In sum, the clearly indicated standard serves an important public policy purpose.  Statutes are the expression of legislative policy and may accordingly be changed at the Legislature's will.  Spina, supra, 41 N.J. at 400.  But that is not so if a contract is found.  Then, legislation "creat[es] rights that [can] never be retracted or even modified." Pittman, supra, 64 F.3d at 1104.  Because the Legislature cedes significant sovereign power by the creation of a legislative contract, the clear indication, or unmistakability, standard is designed to prevent that power from being yielded too easily. See, e.g., Parella v. Ret. Bd. of the R.I. Emps.' Ret. Sys., 173 F.3d 46, 60 (1st Cir. 1999) (recognizing that because public contractual obligation prevents subsequent legislatures from altering that obligation "for merely rational reasons," "there is, for the purposes of the Contract Clause, a higher burden to establish that a contractual obligation has been created"); Studier v. Mich. Pub. Sch. Emps. Ret. Bd., 698 N.W.2d 350, 366

24

(Mich. 2005) ("It seems obvious that to read what is a contract too broadly swallows the right of the people to change the course of their governance."). New Jersey courts have adhered to that standard in the past and we hold that it applies here. See Spina, supra, 41 N.J. at 405; see also Burgos, supra, 222 N.J. at 194-95; N.J. Educ. Ass'n, supra, 412 N.J. Super. at 206-07.

With the clearly indicated standard in mind, we turn to the statutes at issue in this appeal.

IV.

A.

Plaintiffs claim that by contractually guaranteeing the "benefits program," the Legislature created in the non-forfeitable-right statute a right that is broad in scope. From that inclusive, broadly worded right, plaintiffs highlight the express legislative exclusion of medical benefits. Because the Legislature specifically excluded medical benefits from the non-forfeitable right, yet did not expressly exclude COLAs, plaintiffs think it unmistakable that COLAs fall under the umbrella of the benefits program. The State responds that plaintiffs improperly focus on what the Legislature expressly excluded from the benefits program instead of what the Legislature expressly included.

We therefore begin with a close examination of the non-forfeitable-right statute. Adopted in 1997 as an added section to an Administration-drafted bill,[3] section 5 of Chapter 113 provides in pertinent part:

> 5. a. For purposes of this section, a "non-forfeitable right to receive benefits" means that the benefits program, for any employee for whom the right has attached, cannot be reduced. The provisions of this section shall not apply to post-retirement medical benefits which are provided pursuant to law.
>
> b. Vested members of the Teachers' Pension and Annuity Fund, the Judicial Retirement System, the Prison Officers' Pension Fund, the Public Employees' Retirement System, the Consolidated Police and Firemen's Pension Fund, the Police and Firemen's Retirement System, and the State Police Retirement System, upon the attainment of five years of service credit in the retirement system or fund or on the date of enactment of this bill, whichever is later, shall have a

---

[3] The bill originally addressed statutory terms that the State agreed to enact as part of its settlement with the IRS that concerned an unrelated issue and ensured that the State plans operated in conformance with the Internal Revenue Code (IRC). See L. 1997, c. 113, §§ 1 – 4 (codified as N.J.S.A. 43:3C-9.1 – 9.4). Significantly, the Legislature foreclosed the prior practice of allowing movement of State contributed funds into and out of the State's pension systems or funds prior to the close of the fiscal year, when remittance was due of all final amounts of required State contributions to the various systems and funds. See N.J.S.A. 43:3C-9.1. With that amendment, once State-contributed funds were moved into the individual systems or funds, the monies then became corpus of the retirement system or fund and could not be removed, even if the amount was in excess of the required State contribution. Ibid. The monies became designated for the exclusive benefit of the members or their beneficiaries. Ibid.

non-forfeitable right to receive benefits as provided under the laws governing the retirement system or fund upon the attainment of five years of service credit in the retirement system or fund or on the effective date of this act, whichever is later.

. . . .

e. Except as expressly provided herein and only to the extent so expressly provided, nothing in this act shall be deemed to (1) limit the right of the State to alter, modify or amend such retirement systems and funds, or (2) create in any member a right in the corpus or management of a retirement system or pension fund.

[L. 1997, c. 113, § 5 (codified as N.J.S.A. 43:3C-9.5).]

Subsection (a) of N.J.S.A. 43:3C-9.5 defines the "non-forfeitable right to receive benefits" as inapplicable to medical benefits. The definition otherwise protects the "benefits program" from reduction but does not expressly exclude anything else. Plaintiff retirees point to that definitional language as evidence of a clear legislative intent that COLAs were not meant to be excluded from the protected right.

The State's response focuses on subsection (b)'s reference to "benefits as provided under the laws governing the retirement system or fund." Because, in the State's view, COLAs are substantively housed in the Pension Adjustment Act, N.J.S.A. 43:3B-1 to -10, they are not provided by the "laws governing the retirement system or fund" and thus are not part of the non-

27

forfeitable right.  And the State emphasizes that the Legislature has otherwise distinguished the pension benefit from the cost-of-living adjustment.

In our examination of those textual arguments, we note that subsection (b) is the operative subsection to the non-forfeitable-right statute.  Beyond declaring the non-forfeitable right's existence, it contains a description of what comprises the non-forfeitable right that vested members of the public pension systems receive.  Specifically, subsection (b)'s first clause refers to the individual pension systems and funds by name and declares, as non-forfeitable, vested members' "right to receive benefits as provided under the laws governing the retirement system or fund."  Because the non-forfeitable right protects "benefits as provided under the laws governing the retirement system or fund," identified individually by name, we therefore examine the statutes of the individual retirement systems or funds to understand the benefits purportedly provided non-forfeitable protection.  The non-forfeitable-right statute provides no further guidance on the subject.

On close review, it appears that the non-forfeitable-right statute's reference to benefits provided "under the laws governing the retirement system or fund" is a reference to corresponding terminology in the respective individual public pension statutory schemes.  The public pension retirement

28

schemes define each individual "system" or "fund" using common phraseology. That language in each of the systems or funds consistently describes payment of retirement allowances and other benefits under the provisions of that system's enabling act or law. We use the Public Employees' Retirement System of New Jersey as an example, although the phrasing is similar if not identical in all corresponding provisions in the other systems or funds:

> "Public Employees' Retirement System of New Jersey," hereinafter referred to as the "retirement system" or "system," is the corporate name of the arrangement for the payment of retirement allowances and other benefits under the provisions of this act including the several funds placed under said system.
>
> [N.J.S.A. 43:15A-6(m) (emphasis added).][4]

The emphasized language thus defines the system itself (or fund where that term is employed as the system's name) as the means for providing the retirement allowance and other benefits provided to a beneficiary under the provisions of that system's

---

[4] See also N.J.S.A. 18A:66-2(q) (defining similarly "Teachers' Pension and Annuity Fund"); N.J.S.A. 43:16A-1(1) and N.J.S.A. 43:16A-2 (same for "Police and Firemen's Retirement System"); N.J.S.A. 53:5A-3(s) (same for "State Police Retirement System of New Jersey"); N.J.S.A. 43:6A-3(q) (same for "Judicial Retirement System of New Jersey").

29

enabling act.  It does not include reference to benefits authorized to be paid to a beneficiary via other statutes or acts.

In similar fashion, the respective pension schemes use common definitions of key words, which repeatedly emphasize that the benefits conferred under the particular system or fund are those provided for under that fund's or system's enabling act or law.  Continuing to use PERS as an example, we note that the Legislature carefully constructed the conferred benefit and related terms by reference to those provided through the particular statutory act for the pension system.  "Beneficiary" means "any person receiving a retirement allowance or other benefit as provided in this act."  N.J.S.A. 43:15A-6(d) (emphasis added).  See also N.J.S.A. 43:15A-6(k) (defining "pension" as "payments for life derived from appropriations made by the employer as provided in this act" (emphasis added)); N.J.S.A. 43:15A-6(b) (defining "annuity" as "payments for life derived from the accumulated deductions of a member as provided in this act" (emphasis added)).  Importantly, "retirement allowance" also is defined to mean simply "the pension plus the annuity," N.J.S.A. 43:15A-6(o), thus restricting it to those benefits listed above, all of which are delimited to the formulaic terms and conditions set forth fully in the enabling act of the specific retirement system or fund.

30

Considering that the individual systems and funds define benefits as those made available to beneficiaries only pursuant to the provisions of their respective acts, the State urges this Court to find that COLAs are not part of the protected non-forfeitable right. The State relies in good measure on the fact that COLAs are not provided to retired members of those systems or funds through the enabling act or law governing the specific retirement system or fund. Rather, COLAs are authorized and are provided to retirees by way of separate legislation -- the Pension Adjustment Act.

N.J.S.A. 43:3B-2 of the PAA expressly provides for adjustment of the monthly amount of "retirement allowance or pension originally granted to any retirant" (emphasis added), or corresponding "pension or survivorship benefit originally granted to any beneficiary" of a deceased member. The statutory authorization for "adjustment" to the retirement allowance or pension brings the reader back to the touchstone definitions of those and related terms in the individual retirement schemes, all of which define their statutory program of benefits based on the act or law that enables that retirement system or fund.

The sole reference to COLAs in each retirement system's or fund's enabling acts is narrow: COLAs are made a liability of the fund or system. See, e.g., N.J.S.A. 43:15A-24.1. The language providing for that liability is the same in each of the

31

pension systems or funds in issue that contain even this lone

mention of a COLA in their codified scheme;[5] therefore, we quote

from the example cited:

> Pension      adjustment      benefits;      payment;
> funding; liability
>
> Pension adjustment benefits for members and
> beneficiaries    of    the    Public    Employees'
> Retirement System provided by the "Pension
> Adjustment Act," P.L.1958, c. 143 (C.43:3B-1
> et seq.), shall be paid by the retirement
> system and shall be funded as employer
> obligations by the same method provided by law
> for the funding of employer obligations for
> the basic retirement benefits provided by the
> retirement system.
>
> [N.J.S.A. 43:15A-24.1 (emphasis added).]

The above text distinguishes between pension retirement

benefits and pension adjustment benefits within the same

sentence.  Coupled with the separate provision of COLAs in the

PAA, that suggests that the Legislature considered the pension

benefit and the cost-of-living adjustment distinct.  Without the

substantive COLA provisions incorporated into the "laws

governing the retirement system or fund," there is insufficient

evidence to show that making COLAs a liability of the system or

---

[5] See N.J.S.A. 18A:66-18.1 (TPAF); N.J.S.A. 43:6A-33.1 (JRS);

N.J.S.A. 53:5A-34.2 (SPRS); N.J.S.A. 43:16A-15.6 (PFRS).

fund made them a part of the benefits program. How a liability is paid does not necessarily alter the nature of the benefit.[6] Despite argument to the contrary, and the view expressed in the dissent, it is the PAA that confers COLAs. The statutes governing the retirement systems or funds may reference COLAs and provide the mechanics for their funding, but they do not confer them. Only the PAA does that.

Read together, the language of Chapter 113 and the substantive provisions of the individual retirement systems or funds reasonably support the State's position. The non-forfeitable-right statute's protection of benefits "provided under the laws governing the retirement system or fund" refers to the operative enabling provisions of those systems and funds, which, as set forth earlier, do not provide authorization for COLAs.

The State also provides a rationale for the Legislature's express exclusion of medical benefits. The State maintains that

---

[6] Just as N.J.S.A. 43:15A-24.1 did not effectuate a change in the nature of the pension adjustment benefit by making it a liability of the fund, paid for as a prefunded employer obligation, the statute's earlier inclusion of medical benefits did not alter their nature. The prefunding of medical benefits for PERS and TPAF ended in 2007. See L. 2007, c. 103, §§ 43, 44. The prefunded nature of both COLAs and medical benefits at the time of the enactment of the non-forfeitable-right statute in 1997 does not signal clear evidence that either was substantively incorporated and provided to retirees and pension members under either PERS's or TPAF's statutory schemes.

the exclusion was based on the need to ensure that medical benefits be subordinate to retirement benefits in order for the State's retirement plans to remain "qualified" plans under the Internal Revenue Code.  See 26 U.S.C.A. § 401(h)(1).  Medical benefits are subordinate to retirement benefits if, in any given year, the contributions for medical benefits, combined with contributions for life insurance, do not exceed twenty-five percent of the aggregate contributions for retirement benefits.  See 26 C.F.R. 1.401-14(c)(1)(i).  In New Jersey, medical benefits were made subject to negotiation one year prior to passage of the non-forfeitable-right statute.  See L. 1996, c. 8, § 6.  Thus, according to the State, there existed a realistic potential for inflation of medical benefit costs.  If benefits increased in a particular year and could not thereafter be reduced because they were deemed to be non-forfeitable, and the cost of medical benefit payments exceeded the twenty-five percent threshold, a State retirement plan affected in that way would not remain a qualified plan under the IRC.  Although that scenario had not yet occurred in New Jersey, the consequences of a plan being held unqualified were so significant that the Legislature's action eliminated any doubt on the subject, according to the State.

That plausible explanation dispels the notion that the express exclusion of medical benefits can evince only a clear

34

intent on the part of the Legislature to include all else, including COLAs, in the non-forfeitable right. At the very least, the State maintains that the reasonableness of the argument undercuts confidence in any "clearly indicated intent" that requires us to interpret the exclusion as a green light to include COLAs as a protected term of the contract right conferred by the non-forfeitable-right statute through its reference to "benefits program."

Plaintiffs argue that by using the term "benefits program" the Legislature melded the base pension benefit to the COLA. In response, the State relies on statutory language that, it says, does not make the two parts one under the law. The State maintains that, in New Jersey, the COLA never becomes part of the base pension and is not compounded annually. Rather, as explained by the State, tracking the PAA's language, N.J.S.A. 43:3B-2 provides that the monthly retirement allowance "originally granted" to a retiree shall be adjusted in accordance with the provisions of the PAA. In greater detail, the State provides an example to illustrate the PAA's operation. Utilizing the formula in the PAA, as it operated prior to Chapter 78's enactment, a person's base retirement allowance would be entitled to an adjustment equal to sixty percent of the difference between the Consumer Price Index in the year of retirement and the then-current year. The following year, the

35

retirement allowance would be reset to the original amount and the person would again be entitled to an adjustment equaling sixty percent of the difference between the CPI in the year of retirement and the then-current year.

This is not an ordinary statutory interpretation case, so our task here is not to determine which textually based argument is more likely than not the actual intent of the Legislature. To find a statutory contract that would have the effect of restricting subsequent legislative action on the subject, we must find unmistakable evidence of legislative intent to create a non-forfeitable right to COLAs. Fairly viewed, the parties' many arguments are reasonable. Plaintiffs forcefully argue that although medical benefits were expressly excluded from the non-forfeitable right, COLAs were not. The State offers equally persuasive reasons to conclude that the Legislature did not intend to include COLAs as part of the non-forfeitable right: COLAs (substantively provided for in the PAA) are not found in "the laws governing the retirement system or fund" and the Legislature had an independent reason for excluding medical benefits.

Based on our review of the substantive provisions of the retirement systems' or funds' laws referenced in the non-forfeitable-right statute, which detail the benefits receiving protection, and the absence of COLAs from those provisions, we

36

find plaintiff retirees' arguments insufficient. The plain language of the non-forfeitable-right statute does not surely embrace COLAS, as it must to satisfy Spina. Although the dissent states that it tracks Spina, by slighting the State's plausible arguments, its analysis strays from that case and substitutes equitable concerns for the required standard. Notwithstanding the dissent's view, a crisp guarantee of continued COLAs cannot be found in the text of the non-forfeitable-right statute.

To succeed, the plaintiffs needed to demonstrate that the legislative intent to render future COLAs part of the non-forfeitable right conferred by Chapter 113 was unmistakable. From a textual standpoint, that high standard simply is not met here.[7]

B.

---

[7] Post-argument, plaintiffs brought to our attention a recent decision of the Illinois Supreme Court, finding that a legislative reduction in COLAs violated the Pension Protection Clause in the Illinois Constitution. Jones v. Mun. Emps. Annuity & Ben. Fund of Chi., __ N.E.3d __ (Ill. 2016). We find that case unpersuasive for the same reason we find the substance of the analyses of many of the out-of-state cases cited by the State of little help: the COLA question was considered against a wholly different statutory (or in the case of the Illinois decision, constitutional) backdrop. To the extent that we rely on out-of-state cases, our reliance has been limited to general principles applicable regardless of the precise statutory language. The language of our statutes controls the outcome here.

37

Plaintiffs next argue that legislative history further reveals the unmistakable legislative intent to include COLAs under the protection of the non-forfeitable-right statute. Plaintiffs also look to the history and nature of COLAs, arguing that they support their claim that the base pension benefit and COLAs are one and the same.

Ordinarily, we do not turn to extrinsic aids such as legislative history unless there is some ambiguity on the face of the statute itself. See DiProspero v. Penn, 183 N.J. 477, 492-93 (2005). But if there is ambiguity requiring resort to legislative history, one is already outside the realm of unmistakable clarity needed to find a statutory contract right. Although it is not beyond the pale for courts to consider legislative history advanced by litigants looking to "overcome the hurdle of the unmistakability doctrine," see R.I. Bhd. of Corr. Officers v. Rhode Island, 357 F.3d 42, 46 n.3 (1st Cir. 2004), we find reliance on that type of extrinsic evidence necessarily weak. In this setting, any ambiguity spells failure for claims that the Legislature created a contractual right to COLAs. The intent to contract must be unmistakable.

Even if we were to look at legislative history, evidence of such unmistakable intent is wanting there. First, plaintiffs rely on the committee statement accompanying the non-forfeitable-right statute. They emphasize that nothing in that

statement suggested that COLAs were excluded from the non-forfeitable right.  See Senate Budget and Appropriations Committee, Statement to S. No. 1119 (1997).  That argument fails for the same reason plaintiffs' textual argument fails.  It adds nothing beyond the text of the statute, and it focuses on what is unmistakably excluded from the non-forfeitable right instead of what is unmistakably included.

Even weaker is plaintiffs' reliance on a transcript of a legislative hearing conducted by the Senate State Management, Investment and Financial Institutions Committee on the State's pension system, a committee that never passed on the bill that was ultimately introduced and enacted as Chapter 113.  See Public Hearing Before Senate State Management, Investment and Financial Institutions Committee (May 20, 1996).  Only two Senators were present at the hearing, and one departed midway through the hearing.  Id. at 49.  Much of the hearing focused on the actuarial soundness of the pension funds.  But the discussion later moved to the question of whether public employees should have a contractual right to their pension benefits.  Id. at 53.

Plaintiffs focus on the remaining Senator's remarks.  After urging by a union representative that a bill to conform the pension funds to IRS requirements contain additional contractual language, the Senator responded that he "[felt] strongly that

the same protections and rights that are accorded, say, under an ERISA [Employee Retirement Income Security Act] standard to people in the private sector, should be accorded to people in the public sector." Id. at 69. He continued, explaining that, in his view, once public employees "have their pensions established as at a point in time with regard to vesting it, that you cannot go back retroactively and change what has been earned, what has been accrued, what has been vested in." Ibid. Believing that ERISA provides that protection, the Senator added that "[s]urely, at a minimum, that is what we should provide here, too." Ibid.

That type of legislative history is not reliable. The hearing was a forum for airing views by the relevant stakeholders, including representatives from the State and various labor unions, on the current soundness of the pension funds and how to best ensure their long-term viability. After the discussion turned to what would eventually be conceptualized as the non-forfeitable-right statute, the sole remaining Senator offered a preliminary take on the subject, but "the statements of individual legislators are not generally considered to be a reliable guide to legislative intent." State v. Yothers, 282 N.J. Super. 86, 104 (App. Div. 1995) (Skillman, J.A.D., dissenting). We can reliably cast the Senator's statements as his personal thoughts on the topic, thoughts that he

40

acknowledged were preliminary.  No more, no less.  We cannot accept that to be a definitive and unmistakable pronouncement of legislative intent.

Second, plaintiffs contend that the history of COLAs supports the reasonable expectation that they were part and parcel of the singular pension benefit provided on a monthly basis to retirees or their beneficiaries.  However, the history of COLAs in New Jersey points to the opposite conclusion:  that the Legislature granted COLAs as periodic exercises of legislative discretion separate and apart from the base pension, responding to evolving economic, social, and political dynamics.  Cf. Justus, supra, 336 P.3d at 209 ("By its very nature a statutory cost of living adjustment is a periodic exercise of legislative discretion that takes account of changing economic conditions in the state and/or nation.").

In New Jersey, COLAs were not always automatic.  They were instead provided from time to time when the Legislature was persuaded that an adjustment calculated on fiscal realities would be the appropriate public policy of the State.  The frequent legislative tinkering with the COLA formula over the years only underscores that reality.  See, e.g., L. 1958, c. 143, § 3 (granting first COLAs to retirees who retired before 1952); L. 1961, c. 144, § 2 (granting COLAs to retirees who retired between 1952 and 1954); L. 1969, c. 169, §§ 1, 2, 5

41

(expanding COLAs to all eligible retired public employees and providing adjustments based on CPI); L. 1977, c. 306, § 4 (increasing percentage of adjustment from one-half to three-fifths of percentage change in CPI); L. 1981, c. 128, § 1 (increasing percentage of adjustment from three-fifths to two-thirds of percentage change in CPI); L. 1981, c. 128, § 2(a) (returning adjustment to three-fifths of change in CPI); N.J.S.A. 43:3B-7(a) ("The percentage of adjustment shall be [three-fifths] of the percentum of change."); see also Justus, supra, 336 P.3d at 212 ("Modifications over the past half century reflect the legislature's unbridled management of the COLA . . . .").

Plaintiffs' argument taken to its logical end is that, even before the non-forfeitable-right statute was passed, all pensioners -- vested and retired members -- had a reliable expectation that future adjustments under the present CPI formula in the COLA statute could not be prospectively suspended or adjusted. So viewed, once the Legislature granted the first COLAs, COLAs became a perpetual right. But that cannot be, for that is precisely what the presumption against a contract right is designed to prevent -- the hamstringing of the Legislature's right to enact new or changed laws to address present needs. See Wash. Educ. Ass'n v. Dep't of Ret. Sys., 332 P.3d 439, 446 (Wash. 2014) ("Surely the legislature can make the addition of

42

[a COLA] subject to its right to amend or repeal the program in the future. To say otherwise would strongly disincentivize the legislature from providing additional benefits beyond a basic pension."); see also Pittman, supra, 64 F.3d at 1104 ("A statute is not a commitment by the legislature never to repeal the statute."). Indeed, in subsection (e) of the non-forfeitable-right statute, the Legislature specifically reiterated that any benefit not guaranteed by the statute is subject to change by the Legislature. N.J.S.A. 43:3C-9.5(e).

Moreover, the State points to additional statutory support to view COLAs and retirement benefits as not melded together by statute or practice. COLAs are tied to the CPI, making a year-to-year increase uncertain and even allowing for a negative adjustment. See N.J.S.A. 43:3B-7(a); see also Bartlett v. Cameron, 316 P.3d 889, 895 (N.M. 2013) ("Future economic growth is neither consistent nor dependable, and any adjustment predicated on economic growth is at best indefinite, antithetical to a vested property right.").

But a negative adjustment cannot take the total amount a retiree receives below the initial base benefit. See N.J.S.A. 43:3B-7(a) (allowing for negative adjustment but providing that "[i]n no instance shall the amount of the retirement allowance or pension originally granted and payable to any retirant be reduced as a result of [an] adjustment"). That legislative

43

distinction between the COLA and the initial pension amount -- the benefits floor, below which the amount received cannot drop -- supports the State's argument that the two are not one and the same. See Me. Ass'n of Retirees, supra, 758 F.3d at 31 (accepting as "possible" argument that "in setting the retirement-date pension amount as the floor below which a negative CPI could not reduce the allowance, the Legislature arguably treated the base pension amount as the benefit, protected against deflationary reduction, and COLA increases as potentially temporary adjustments to that benefit" (internal citation omitted)). As the State points out, Chapter 78 did not purport to take away any adjustment already made; it simply stopped further adjustment until certain conditions were met. After Chapter 78, no retiree saw his monthly pension benefit drop.

To adopt the retirees' argument about prior practice providing the basis for an implicit contract right to ongoing COLAs reads into Chapter 113 -- which is silent on COLAs -- a perpetual escalator clause entirely out of State control, driven only by the pertinent CPI. The Legislature's right to set the policy of this State as it sees fit cannot permit such a result unless a law clearly and unmistakably takes that power away from future legislatures.

44

We conclude that the additional extrinsic evidence does not further the retirees' argument that the Legislature acted with the required intent. The text of the non-forfeitable-right statute is not sufficiently clear to have unmistakably conferred a statutory contract right to continued COLAs. Nor is its surrounding history. The Appellate Division's careful analysis went awry in reversing that presumption. Moreover, Chapter 78 enjoys a presumption of constitutionality. And the Legislature's view that its prior action in Chapter 113 did not prevent future suspensions of COLAs is relevant in our consideration. See Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 623 (2004) ("[S]ubsequent legislation may be used by a court as an extrinsic aid when seeking to discern earlier legislative intent."). Clearly, the Legislature did not think itself bound to never suspend the PAA right to continued increases in pension adjustments based on cost-of-living indices. To find a contrary intent requires a much greater demonstration than the plaintiffs have available to them.

All of the aforesaid arguments considered, we conclude that the statutory and contract claims advanced by plaintiffs must fail. For the Legislature to have given up so much control over a future Legislature's ability to react to the present needs of the State, the expression of a statutory contract and the individual terms of such a contract must be unmistakably clear.

45

That clarity is absent here in respect of the continued right to receive additional COLAs after their suspension in 2011.[8]

## V.

Finally, and alternatively, petitioner Ouslander contends that equity prevents the State from terminating COLAs for those employees who retired prior to the enactment of Chapter 78. More specifically, petitioner claims he is entitled to a remedy for the State's actions under the principles of procedural and substantive due process and equitable estoppel. Because the language of the non-forfeitable-right statute does not guarantee COLAs, it necessarily follows that the retirees could not reasonably rely on the statute's terms for purposes of a claim in equity.

To support an estoppel theory, a litigant must prove that the opposing party "engaged in conduct, either intentionally or under circumstances that induced reliance[.]" Knorr v. Smeal, 178 N.J. 169, 178 (2003). This involves "a knowing and intentional misrepresentation" by the party against whom estoppel would apply. O'Malley v. Dep't of Energy, 109 N.J. 309, 317 (1987). The non-forfeitable-right statute's disputed

---

[8] Because we find no statutory contract right, there is no need to examine further petitioner Ouslander's challenge to the Appellate Division's rejection of his arguments on sovereign immunity and its application to a claimed violation of the Federal Contract Clause. We will not address an issue that is unnecessary to our disposition.

language does not unambiguously include COLAs within its guarantee, so the text itself does not suggest an intentional representation by the Legislature of the certain payment of perpetual adjustments. Even the State's course of conduct -- in this case the continual payment of COLAs for decades -- must be tempered by the limited reach of the language of the non-forfeitable-right statute and the Legislature's prerogative to change the laws. The retirees could not reasonably expect perpetual COLAs when the non-forfeitable-right statute specifically notes that any benefit not guaranteed by the statute, a category that we hold includes COLAs, is subject to change by the Legislature. N.J.S.A. 43:3C-9.5(e). To hold otherwise would suggest that the pensioners had a right to receive continued pension payments before the statute was enacted, which is contrary to the history of COLA legislation and the ability of the Legislature to amend, repeal, and modify legislation.

Petitioner's due process claims are unavailing for similar reasons. Those claims depend on the existence of a vested right, Twiss v. State, 124 N.J. 461, 467 (1991); the continued receipt of COLAs cannot be categorized in that way based on the current text of the non-forfeitable-right statute. This is especially true because the heightened standard of National Railroad, supra, applies equally to an analysis of vested rights

47

created by statute.  See 470 U.S. at 465-66, 105 S. Ct. at 1451, 84 L. Ed. 2d at 446 ("[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." (emphasis added) (internal quotation marks omitted)).

Ultimately, petitioner's alternative claims are belied by the same evidence that guided our Contract Clause analysis.  The text of the non-forfeitable-right statute does not reveal an unequivocal intent of the Legislature to include COLAs within its contractual guarantees.  The absence of unequivocal legislative intent forecloses petitioner's equitable claims.

Regardless of the merits of petitioner's claims, the creation of legislation is an essential function of the Legislature, so that sovereign immunity bars the equitable estoppel claim.  See O'Malley, supra, 109 N.J. at 316 (noting application of equitable estoppel against governmental entity is particularly rare when it would interfere "with essential governmental functions" (quoting Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954)); 28 Am. Jur. 2d Estoppel & Waiver § 128 (2011) ("It has been held that estoppel may not be applied against the government acting in its sovereign capacity.")). Equitable estoppel may be invoked against a governmental entity

only "to prevent manifest injustice." O'Malley, supra, 109 N.J. at 316. Here, as in all cases, equity follows the law. Because we have determined that the non-forfeitable-right statute does not guarantee COLAs, we decline to provide a remedy in equity that is not available under the law.

## VI.

The judgment of the Appellate Division is reversed, and the trial court's judgment dismissing the complaints is reinstated.


CHIEF JUSTICE RABNER; JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.

49

RICHARD W. BERG, ROBERT J.
BRASS, THOMAS CANNAVO,
MELAINE B. CAMPBELL, LARRY
ROBERT ETZWEILER, KATHY
FLICKER, ARNOLD GOLDEN,
CHARLES GRINELL, TONI A.
HENDRICKSEN, HAROLD
KASSELMAN, SUSAN LOTHIAN,
STEPHEN H. MONSON, MARTIN C.
MOONEY, SR., BRIAN
MULHOLLAND, ANNE C. PASKOW,
SHARYN PEIFFER, SAMUEL REAL,
JR., GREGORY J. SAKOWICZ,
SUSAN W. SCIACCA, WILLIAM H.
SCHMIDT, FRED SCHWANWEDE,
JOHN J. SMITH, DEBRA STONE,
SHERI TANNE, AND JACK L.
WEINBERG,

     Plaintiffs-Respondents,

        and

CHARLES OUSLANDER,

     Plaintiff-Appellant
     and Cross-Respondent,

        and

NEW JERSEY EDUCATION
ASSOCIATION, NEW JERSEY STATE
POLICEMEN'S BENEVOLENT
ASSOCIATION, INC.,
COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO, NEW JERSEY
FRATERNAL ORDER OF POLICE,
NEW JERSEY STATE

FIREFIGHTERS' MUTUAL
BENEVOLENT ASSOCIATION,
PROFESSIONAL FIREFIGHTERS
ASSOCIATION OF NEW JERSEY,
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, COUNCIL 1, AFL-
CIO, AMERICAN FEDERATION OF
STATE, COUNTY AND MUNICIPAL
EMPLOYEES, COUNCIL 73, AFL-
CIO, AMERICAN FEDERATION OF
TEACHERS NEW JERSEY STATE
FEDERATION, AFL-CIO,
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO & CLC,
LOCAL 194, INTERNATIONAL
FEDERATION OF PROFESSIONAL
AND TECHNICAL ENGINEERS, AFL-
CIO, LOCAL 195, INTERNATIONAL
FEDERATION OF PROFESSIONAL
AND TECHNICAL ENGINEERS, AFL-
CIO & CLC, LOCAL 200,
PROBATION ASSOCIATION OF NEW
JERSEY, NEWARK FIREFIGHTERS
UNION, MORRIS COUNCIL NOS. 6
AND 6A, NJCSA IFPTE, AFL-CIO,
JERSEY CITY POLICE OFFICERS
BENEVOLENT ASSOCIATION,
CAMDEN COUNTY COUNCIL #10,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 97,
BELLEVILLE PBA LOCAL 28, NEW
JERSEY ASSOCIATION OF SCHOOL
ADMINISTRATORS, NEW JERSEY
PRINCIPALS AND SUPERVISORS
ASSOCIATION, NEW JERSEY
ASSOCIATION OF SCHOOL
BUSINESS OFFICIALS, NEW
JERSEY RETIREES' EDUCATION
ASSOCIATION, TRANSPORT
WORKERS UNION LOCAL 225, NEW
JERSEY SUPERIOR OFFICERS LAW
ENFORCEMENT ASSOCIATION,

2

ATLANTIC CITY WHITE COLLAR
PROFESSIONAL ASSOCIATION,
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 210,
ATLANTIC CITY SUPERIOR
OFFICERS ASSOCIATION, PETER
BURKHALTER, DEE TRUCHON,
GEORGE O'BRIEN, THOMAS
TEVLIN, ROBERT BROWER,
ROSEMARIE JANKOWSKI, IRIS J.
ELLIOTT, KENNETH D. KING,
FRANK ELMER HICKS, WILLIAM A.
PARKER, BRAD FAIRCHILD,
DWIGHT COVALESKIE, ANTHONY F.
WIENERS, GARY SOUSS, WILLIAM
LAVIN, CHARLES WEST, MARIAN
LEZGUS, MELANIE HAFDELIN,
STEVEN ENGRAVALLE, CINDY
BARR-RAGUE, DOMINICK MARINO,
JOHN J. GEROW, JANET S.
ZYNROZ, ALFRED CRESCI, RAE C.
ROEDER, MARYANN PIUNNO SMITH,
MARYANN MESICS, DENNIS
REITER, ANTHONY MISKOWSKI,
VINCENT KAIGHN, WILLIAM S.
BAUER, JR., MICHAEL
CALABRESE, and DEBORAH
JACOBS,

  Plaintiffs/Intervenors-
  Respondents,

    v.

HON. CHRISTOPHER J. CHRISTIE,
HON. KIM GUADAGNO, SECRETARY
OF STATE OF THE STATE OF NEW
JERSEY, DIRECTOR, DIVISION OF
PENSIONS, BOARD OF TRUSTEES,
PUBLIC EMPLOYEES' RETIREMENT
SYSTEM, TREASURER, STATE OF
NEW JERSEY AND STATE OF NEW
JERSEY,

3

Defendants-Respondents
and Cross-Appellants.

_____

MICHAEL DELUCIA, PATRICIA
DELUCIA, ROBERT C. BROWN, AND
ANNE K. BROWN,

    Plaintiffs,

        v.

STATE OF NEW JERSEY
DEPARTMENT OF THE TREASURY,
DIVISION OF PENSIONS AND
BENEFITS,

    Defendants.


    JUSTICE ALBIN, dissenting.

    Sometimes a plainly written statute is just a plainly written statute.  I do not agree with the majority that the pension statutes at issue, which guarantee retired public employees a cost-of-living adjustment (COLA), lack clarity or are susceptible to two interpretations.

    In 1997, the Legislature made a contractual promise to public employees when it passed the Non-Forfeitable Right Statute, N.J.S.A. 43:3C-9.5.  L. 1997, c. 113, § 5.  Public employees whose pension rights had vested were assured that they had a "non-forfeitable right to receive benefits as provided under the laws governing the retirement system or fund," N.J.S.A. 43:3C-9.5(b), and that their "benefits program" could

4

not be reduced, N.J.S.A. 43:3C-9.5(a).  (Emphasis added).  At the time of the passage of the Non-Forfeitable Right Statute, the "laws governing the retirement system or fund," N.J.S.A. 43:3C-9.5(b), specifically provided for cost-of-living adjustments for retired public employees.  The statutory scheme of each currently open retirement system or fund not only directly incorporates the Pension Adjustment Act (PAA), N.J.S.A. 43:3B-1 to -10, but also states that pension adjustment benefits (cost-of-living adjustments) "shall be paid by the retirement system" to vested public employees.[9]  The pension fund and system statutes clearly and distinctly designate COLAs as pension benefits.

The pension benefits program mentioned in the Non-Forfeitable Right Statute has three components:  base benefits,

---

[1] The pension systems and funds are the Teachers' Pension and Annuity Fund, N.J.S.A. 18A:66-1 to -93, the Police and Firemen's Retirement System, N.J.S.A. 43:16A-1 to -68, the Public Employees' Retirement System, N.J.S.A. 43:15A-1 to -161, the Judicial Retirement System, N.J.S.A. 43:6A-1 to -47, and the State Police Retirement System, N.J.S.A. 53:5A-1 to -47.  The two remaining funds mentioned in the Non-Forfeitable Right Statute, the Consolidated Police and Firemen's Pension Fund, N.J.S.A. 43:16-1 to -21, and the Prison Officers' Pension Fund, N.J.S.A. 43:7-7 to -27, have been closed to new members since 1944 and 1960, respectively.  See N.J.S.A. 43:7-8 ("No person employed on or after January 1, 1960 shall be eligible for membership in the Prison Officers' Pension Fund."); N.J.S.A. 43:16-17 (defining "member" as "a person who on July 1, 1944, was a member of a municipal police department . . . fire department or county police department" for Consolidated Police and Firemen's Pension Fund).

5

medical benefits, and COLAs.  That statute excludes medical benefits, but not COLAs.  Had the Legislature intended to exclude COLAs, it knew how to do so.  Because the cost-of-living adjustment was contained in laws "governing the retirement system or fund" and not subject to any exclusion in the Non-Forfeitable Right Statute, the public employee retirees who have brought suit are entitled to the pension benefits promised to them.  This ineluctable conclusion follows from the clear and unambiguous language of the relevant statutes.  The wording and interconnection of those statutes do not suggest any other plausible interpretation.

The PAA and each retirement system and fund guaranteed public employees that, if they retired, their pension benefits would be sustained by a periodic cost-of-living adjustment.  In making the critical decision of whether and when to retire, public employees relied on the legislative promise that COLAs would protect their pensions from the ravages of inflation. Many public employees may not have retired or may have deferred their retirement had COLAs not been guaranteed as part of their pension benefits program.  Although the Legislature had the right to suspend COLAs for those public employees whose pension benefits had not vested and who had yet to retire, it did not have the right to do so for those public employees who retired expecting that the State would keep its word.  The Legislature

6

did here precisely what the United States and New Jersey Constitutions prohibit: it passed a law impairing the obligation of its own contract. See U.S. Const. art. I, § 10, cl. 1.; N.J. Const. art. IV, § 7, ¶ 3.

I concur with the judgment of the Appellate Division, Berg v. Christie, 436 N.J. Super. 220 (App. Div. 2014), which the majority has overturned. The retired public employees in this case are entitled to their full pension benefits earned over the course of their careers. I therefore respectfully dissent.

I.

The first paragraph of the Non-Forfeitable Right Statute, N.J.S.A. 43:3C-9.5(a), provides:

> For purposes of this section, a "non-forfeitable right to receive benefits" means that the benefits program, for any employee for whom the right has attached, cannot be reduced. The provisions of this section shall not apply to post-retirement medical benefits which are provided pursuant to law.

The second paragraph, N.J.S.A. 43:3C-9.5(b), states:

> Vested members of the Teachers' Pension and Annuity Fund, the Judicial Retirement System, the Prison Officers' Pension Fund, the Public Employees' Retirement System, the Consolidated Police and Firemen's Pension Fund, the Police and Firemen's Retirement System, and the State Police Retirement System, upon the attainment of five years of service credit in the retirement system or fund or on the date of enactment of this bill, whichever is later, shall have a non-forfeitable right to receive benefits as provided under the laws governing the

7

retirement system or fund upon the attainment
of five years of service credit[.]

The majority reads the language of the second paragraph --
"the laws governing the retirement system or fund," N.J.S.A.
43:3C-9.5(b) -- as referring only to the base pensions conferred
by each pension fund or system.  (Emphasis added).  With that
constricted view, the majority concludes that the legislative
contract formed in the Non-Forfeitable Right Statute extends no
further.  That approach, however, requires that we put on
blinders to the provisions of the statutes in each retirement
system and fund that confer a cost-of-living adjustment to
retired public employees.

At the time of passage of the Non-Forfeitable Right
Statute, the laws governing each retirement system and fund
included specific provisions for the payment of COLAs to vested
and retired public employees.  See N.J.S.A. 18A:66-18.1
("Pension adjustment benefits for members and beneficiaries of
the Teachers' Pension and Annuity Fund as provided by the [PAA]
shall be paid by the retirement system[.]" (citation omitted));
N.J.S.A. 43:6A-33.1 ("Pension adjustment benefits for members
and beneficiaries of the Judicial Retirement System provided by
the [PAA] shall be paid by the retirement system[.]" (citation
omitted)); N.J.S.A. 43:15A-24.1 ("Pension adjustment benefits
for members and beneficiaries of the Public Employees'

8

Retirement System provided by the [PAA] shall be paid by the retirement system[.]" (citation omitted)); N.J.S.A. 43:16A-15.6 ("Pension adjustment benefits for members and beneficiaries of the Police and Firemen's Retirement System of New Jersey as provided by [the PAA] shall be paid by the retirement system[.]" (citation omitted)); N.J.S.A. 53:5A-34.2 ("Pension adjustment benefits for members and beneficiaries of the State Police Retirement System provided by the [PAA] shall be paid by the retirement system[.]" (citation omitted)).[10]

The clear and unmistakable language of every statute above provides for COLAs in a retirement system or fund in which public employees are beneficiaries. Each of those statutes directly incorporates the Pension Adjustment Act. The Non-Forfeitable Right Statute and retirement system and fund statutes when read together meet the high standard for a legislative contract. See Spina v. Consol. Police & Firemen's Pension Fund Comm'n, 41 N.J. 391, 405 (1964) (stating that "legislative contract" should be "so plainly expressed that one

---

[2] Each of those statutory provisions also provides that COLAs shall be funded as employer obligations. See, e.g., N.J.S.A. 18A:66-18.1 ("Pension adjustment benefits for members and beneficiaries of the Teachers' Pension and Annuity Fund as provided by the [PAA] . . . shall be paid by the retirement system and shall be funded as employer obligations by the same method provided by law for the funding of employer obligations for the basic retirement benefits provided by the retirement system." (citation omitted)).

9

cannot doubt the individual legislator understood and intended it").

The Legislature was familiar with the COLA retirement benefit conferred by those statutes at the time of the enactment of the Non-Forfeitable Right Statute. Mahwah Twp. v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 279 ("The Legislature is presumed to have been aware of existing legislation[.]"), cert. denied, 471 U.S. 1136, 105 S. Ct. 2677, 86 L. Ed. 2d 696 (1985). Those statutory provisions clearly show that COLAs were an integral part of the benefits program provided to retired public employees under various pension systems.

The majority's approach, moreover, does not conform to the logic of N.J.S.A. 43:3C-9.5. If section b's reference to "laws governing the retirement system or fund" encompassed nothing more than a public employee's right to the base pension pay, then the Legislature would have had no need to exclude "post-retirement medical benefits" provided by law from N.J.S.A. 43:3C-9.5's benefits program. The majority's interpretation renders the exclusion superfluous. Yet, our canons of statutory construction mandate that we give effect to all the words of a legislative enactment. McCann v. Clerk of Jersey City, 167 N.J. 311, 321 (2001) (quoting Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969)).

In that light, the post-retirement medical benefits

10

exclusion is not mere surplusage. The Legislature clearly and distinctly expressed that the employees' benefits program included more than base pension benefits by pointedly excluding medical benefits. In other words, if the benefits program mentioned in N.J.S.A. 43:3C-9.5(b) was limited to base pension benefits, the Legislature would not have crafted the medical benefits exclusion in N.J.S.A. 43:3C-9.5(a). See Prado v. State, 186 N.J. 413, 426-27 (2006) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions[.]") (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 47.11 (5th ed. 1992)).

Accordingly, the exclusion of only post-retirement medical benefits from the Non-Forfeitable Right Statute clearly evinced the Legislature's intent to confer on retiring public employees the remaining contractually promised post-retirement benefits -- the base pension and COLA.

## II.

The cost-of-living adjustment has been a post-retirement benefit for certain public employees since the passage of the Pension Adjustment Act in 1958. See L. 1958, c. 143. In the years that followed, the Legislature amended the PAA a number of times, ingraining the COLA as a basic component of a pensioner's retirement benefits. See, e.g., L. 1977, c. 306, § 6

11

(increasing adjustment from one-half of percentage of change in Consumer Price Index to three-fifths of percentage of change); L. 1969, c. 169, § 1 (providing that adjustments would be based on Consumer Price Index); L. 1964, c. 198, § 1 (applying COLA to first $900 of retirement benefit). To place COLAs on a secure financial footing, the Legislature required that employers pre-fund COLAs, thus replicating the funding structure for base pensions. See, e.g., L. 1990, c. 6 (Public Employees' Retirement System); L. 1989, c. 204 (Police and Firemen's Retirement System); L. 1987, c. 385 (Teachers' Pension and Annuity Fund).

When the Legislature enacted the Non-Forfeitable Right Statute, N.J.S.A. 43:3C-9.5, in 1997, which guaranteed that vested public employees had a non-forfeitable right to post-retirement benefits (other than medical benefits) "under the laws governing the retirement system or fund," public employees reasonably believed that COLAs were an essential part of their pension. That reasonable belief sprang from clear and unmistakable statutory language. Public employees relied on that language in deciding whether and when to retire.[11] Without

_____

[3] The New Jersey Division of Pensions and Benefits published a fact sheet explaining to members of the pension funds and systems how to calculate COLAs and who to contact to verify their current allowance and deduction information. N.J. Div. of Pensions & Benefits, Fact Sheet #18: Cost-of-Living Adjustments (Nov. 2005),

the guarantee of a cost-of-living adjustment, many public employees may have determined that they would be unable to financially support their families and may have postponed their retirements.

In 2010, the Legislature limited the right to non-forfeitable post-retirement benefits to those public employees whose pension rights had become vested before May 21 of that year.  See L. 2010, c. 1.  In 2011, the Legislature suspended automatic COLAs for current and future retirees beginning June 28, 2011.  L. 2011, c. 78, § 25 (codified as amended at N.J.S.A. 43:3B-2(a)).

No one doubts that the Legislature is empowered, and has the duty, to make the State's pension system fiscally sound. But the United States and New Jersey Constitutions bar the Legislature from unilaterally abrogating a contract it made with its retired public employees.  The various pension systems and funds must honor the contractual right of those employees to future cost-of-living adjustments under the Non-Forfeitable Right Statute.  The Federal and State Contracts Clauses prohibit the state from impairing a contractual obligation.  U.S. Const. art. I, § 10, cl. 1. ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]"); N.J. Const. art. IV,

---

http://www.njleg.state.nj.us/propertytaxsession/opi/fact18.pdf.

§ 7, ¶ 3 ("The Legislature shall not pass any . . . law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made.").[12]  Those clauses are limitations on legislative power.  New Jersey has waived its right to assert sovereign immunity through the New Jersey Contractual Liability Act.  See Alden v. Maine, 527 U.S. 706, 755, 119 S. Ct. 2240, 2267, 144 L. Ed. 2d 636, 679 (1999) ("sovereign immunity bars suit only in the absence of consent," and therefore state may waive its immunity under the Eleventh Amendment); Allen v. Fauver, 167 N.J. 69, 75 (2001) (explaining that sovereign immunity will not bar suit if there is "express legislative consent to suit").  The Act provides:

> The State of New Jersey hereby waives its sovereign immunity from liability arising out of an express contract or a contract implied in fact and consents to have the same determined in accordance with the rules of law

---

[4]  It bears noting that in 2006, the Office of Legislative Services issued an opinion letter concluding that legislation that would detrimentally alter the retirement benefits of qualified retirees "would be unconstitutional as violative of the federal and State constitutional proscription against impairment of the obligation of contracts."  N.J. State Leg., Office of Legis. Servs., Opinion Letter on Reduction of Retirement Benefits for Public Employees (Aug. 21, 2006), http://www.njleg.state.nj.us/propertytaxsession/opi/jcpe_resourc es_08232006.pdf.  That letter also stated that the financial instability of the system "was foreseeable at the inception of the contractual relationship and the State, nevertheless, committed itself and did not reserve the right to unilaterally adopt substantial modifications of the pension program."  Ibid.

14

> applicable to individuals and corporations; provided, however, that there shall be no recovery against the State for punitive or consequential damages arising out of contract nor shall there be any recovery against the State for claims based upon implied warranties or upon contracts implied in law.
>
> [N.J.S.A. 59:13-3.]

Accordingly, the Legislature, pursuant to the Contractual Liability Act, has waived immunity from suit for its violation of its express contractual obligations to the retired public employees in this case.[13]

Whatever reforms the Legislature enacts to ensure the financial stability of the pension system must conform to the Constitution. The promises made to public employees through the Non-Forfeitable Right Statute meet the definition of a legislative contract. That is so because the commitment made in that statute is so plainly expressed that there can be no doubt about the Legislature's intent. See Spina, supra, 41 N.J. at 405.

## III.

Unlike the majority, I conclude that public employee plaintiffs in this case have an enforceable contractual right to

---

[5] Employees and employers prefunded the COLA. See, e.g., N.J.S.A. 43:3B-4.3; N.J.S.A. 43:15A-24; N.J.S.A. 43:15A-24.1. The payment of monies owed to retired public employees does not require a legislative appropriation because those monies are in a preexisting fund.

15

their COLAs.  I therefore respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO. __A-71/72__ SEPTEMBER TERM 2014

ON CERTIFICATION FROM _____Appellate Division, Superior Court_____

RICHARD W. BERG, ROBERT J. BRASS,
THOMAS CANNAVO, MELAINE B.
CAMPBELL, LARRY ROBERT ETZWEILER,
KATHY FLICKER, ARNOLD GOLDEN,
CHARLES GRINELL, TONI A. HENDRICKSEN,
HAROLD KASSELMAN, SUSAN LOTHIAN,
STEPHEN H. MONSON, MARTIN C. MOONEY,
SR., BRIAN MULHOLLAND, ANNE C.
PASKOW, SHARYN PEIFFER, SAMUEL REAL,
JR., GREGORY J. SAKOWICZ, SUSAN W.
SCIACCA, WILLIAM H. SCHMIDT, FRED
SCHWANWEDE, JOHN J. SMITH, DEBRA
STONE, SHERI TANNE, AND JACK L.
WEINBERG,

       Plaintiffs-Respondents,

       and

CHARLES OUSLANDER,

       Plaintiff-Appellant
       and Cross-Respondent,

       and

NEW JERSEY EDUCATION ASSOCIATION,
NEW JERSEY STATE POLICEMEN'S
BENEVOLENT ASSOCIATION, INC.,
COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO, NEW JERSEY
FRATERNAL ORDER OF POLICE, NEW
JERSEY STATE FIREFIGHTERS' MUTUAL
BENEVOLENT ASSOCIATION,
PROFESSIONAL FIREFIGHTERS
ASSOCIATION OF NEW JERSEY, AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, COUNCIL 1, AFL-

CIO, AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 73, AFL-CIO, AMERICAN
FEDERATION OF TEACHERS NEW JERSEY
STATE FEDERATION, AFL-CIO,
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO & CLC, LOCAL 194,
INTERNATIONAL FEDERATION OF

PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO, LOCAL 195, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO & CLC, LOCAL 200, PROBATION ASSOCIATION OF NEW JERSEY, NEWARK FIREFIGHTERS UNION, MORRIS COUNCIL NOS. 6 AND 6A, NJCSA IFPTE, AFL-CIO, JERSEY CITY POLICE OFFICERS BENEVOLENT ASSOCIATION, CAMDEN COUNTY COUNCIL #10, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 97, BELLEVILLE PBA LOCAL 28, NEW JERSEY ASSOCIATION OF SCHOOL ADMINISTRATORS, NEW JERSEY PRINCIPALS AND SUPERVISORS ASSOCIATION, NEW JERSEY ASSOCIATION OF SCHOOL BUSINESS OFFICIALS, NEW JERSEY RETIREES' EDUCATION ASSOCIATION, TRANSPORT WORKERS UNION LOCAL 225, NEW JERSEY SUPERIOR OFFICERS LAW ENFORCEMENT ASSOCIATION, ATLANTIC CITY WHITE COLLAR PROFESSIONAL ASSOCIATION, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 210, ATLANTIC CITY SUPERIOR OFFICERS ASSOCIATION, PETER BURKHALTER, DEE TRUCHON, GEORGE O'BRIEN, THOMAS TEVLIN, ROBERT BROWER, ROSEMARIE JANKOWSKI, IRIS J. ELLIOTT, KENNETH D. KING, FRANK ELMER HICKS, WILLIAM A. PARKER, BRAD FAIRCHILD, DWIGHT COVALESKIE, ANTHONY F. WIENERS, GARY SOUSS, WILLIAM LAVIN, CHARLES WEST, MARIAN LEZGUS, MELANIE HAFDELIN, STEVEN ENGRAVALLE, CINDY BARR-RAGUE, DOMINICK MARINO, JOHN J. GEROW, JANET S. ZYNROZ, ALFRED CRESCI, RAE C. ROEDER, MARYANN PIUNNO SMITH, MARYANN MESICS, DENNIS REITER, ANTHONY MISKOWSKI, VINCENT KAIGHN, WILLIAM S. BAUER, JR., MICHAEL CALABRESE, and DEBORAH JACOBS,

       Plaintiffs/Intervenors-Respondents,

          v.

HON. CHRISTOPHER J. CHRISTIE, HON. KIM GUADAGNO, SECRETARY OF STATE OF THE STATE OF NEW JERSEY, DIRECTOR, DIVISION OF PENSIONS, BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, TREASURER, STATE OF NEW JERSEY AND STATE OF NEW JERSEY,

        Defendants-Respondents
        and Cross-Appellants.

MICHAEL DELUCIA, PATRICIA DELUCIA, ROBERT C. BROWN, AND ANNE K. BROWN,

        Plaintiffs,

           v.

STATE OF NEW JERSEY DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS AND BENEFITS,

        Defendants.

DECIDED        June 9, 2016

        Chief Justice Rabner        PRESIDING

OPINION BY        Justice LaVecchia

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY        Justice Albin

| CHECKLIST | REVERSE AND REINSTATE | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | 1 |