NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0453-15T3

CHEE LI and FENG LI,

 Plaintiffs-Appellants,

v.

BMW OF NORTH AMERICA, LLC,

 Defendant-Respondent.
_____________________________

 Submitted January 31, 2017 - Decided June 19, 2017

 Before Judges Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Morris County, Docket
 No. L-3014-13.

 Chee Li and Feng Li, appellants pro se.

 Lindabury, McCormick, Estabrook & Cooper,
 P.C., attorneys for respondent (Steven A.
 Andreacchi, of counsel and on the brief).

PER CURIAM

 Plaintiffs, appearing pro se, appeal an August 17, 2015 order

dismissing plaintiff Feng Li's claims due to a lack of standing,

and a May 28, 2015 order granting defendant's request to limit
plaintiffs' written discovery demands. Based on our review of the

record under the applicable law, we affirm.

 I.

 The material facts are not in dispute. On November 11, 2013,

plaintiffs Chee Li (Chee) and her husband Feng Li (Feng),1 filed

a pro se complaint against defendant BMW of North America, LLC,

alleging that in February 2011, plaintiffs purchased a defective

vehicle from a local BMW dealership (dealership). The vehicle was

covered by defendant's warranty agreement "against defects in

materials or workmanship to the first retail purchaser, and each

subsequent purchaser," for a period of "forty-eight months or

50,000 miles, whichever occurs first." Plaintiffs claimed that

following the purchase, defendant refused to honor the warranty

agreement when the vehicle experienced ongoing mechanical issues

related to oil usage.

 Plaintiffs filed a complaint alleging defendant sold the

vehicle knowing it was defective, and breached the warranty

agreement by refusing to repair the alleged defect. Plaintiffs

asserted the following five claims: violations of the Magnuson-

Moss Warranty Federal Trade Commission Improvement Act (MMWA), 15

U.S.C.A. §§ 2301 to 2312, (count one); breach of express warranty

1
 Because plaintiffs share a surname, for ease of reference we
respectfully refer to them by their first names.

 2 A-0453-15T3
(count two); breach of the implied covenant of good faith and fair

dealing (count three); violations of the New Jersey Consumer Fraud

Act (CFA), N.J.S.A. 56:8-1 to -20, (count four); and breach of the

implied warranty of merchantability (count five).

 Several disputes between the parties arose during discovery.

Plaintiffs opposed defendant's request that its expert inspect the

vehicle outside of plaintiffs' presence. Defendant claimed

plaintiffs' service of 318 interrogatories and fifty-three

document demands was excessive. Defendant moved to compel

plaintiffs to produce the vehicle for inspection, plaintiffs

cross-moved to permit their presence at the vehicle inspection,

and defendant moved for a protective order limiting plaintiffs'

discovery requests.

 On May 28, 2014, the court entered an order granting

defendant's motions and denying plaintiffs' cross-motion. In a

written decision the judge found plaintiffs failed to demonstrate

good cause for allowing their presence at the vehicle inspection,

relying upon the standard set forth in Briglia v. Exxon Co., USA,

310 N.J. Super. 498, 502-03 (Law Div. 1997).2 The court also

determined plaintiffs' discovery demands were excessive and

2
 The court recognized that Briglia governs the permissibility of
a party's attendance at independent medical examinations, but
found its reasoning instructive in the present matter.

 3 A-0453-15T3
limited plaintiffs' discovery requests to twenty-five

interrogatories and fifteen document demands.

 The discovery exchanged between the parties revealed that the

retail installment contract, purchase documentation, and vehicle

title listed Chee as the vehicle's purchaser. Defendant moved to

dismiss Feng's claims, arguing he lacked standing to prosecute the

causes of action in the complaint, and that Feng, a disbarred New

Jersey attorney,3 was engaged in the unauthorized practice of law

by acting as counsel for the vehicle's purchaser, Chee.

 Following oral argument on defendant's motion, the court held

an evidentiary hearing on "the issue of whether Feng [] has [an]

ownership interest in the [vehicle] that is the subject of this

action and/or standing to maintain this action." On August 6,

2015, the court summarized the facts developed at the evidentiary

hearing and issued an oral decision.

 As explained by the court, Feng testified he and Chee

purchased the vehicle for his use, and Chee owned a separate

vehicle. Feng testified he negotiated the purchase of the vehicle

with a dealership sales representative, but did not qualify for

the necessary financing. Feng explained that arrangements were

then made for Chee to purchase the vehicle, as she qualified for

3
 See In re Feng Li, 213 N.J. 523 (2013).

 4 A-0453-15T3
the financing. The paperwork for the purchase and financing were

made in Chee's name, and the motor vehicle title and registration

were issued to Chee. Feng testified that he later "attempted to

have his name put on the certificate of title, but [defendant]

refused."

 Feng testified that "the purpose of the acquisition of the

car was so . . . he could drive it." Feng incurs all of the

maintenance costs on the vehicle, and Chee makes the monthly

financing payments with money Feng provides to her. Chee testified

"that she does not drive" the car and that Feng "pays for the car

in the sense that he transfers money to her, which she then

forwards along . . . electronically, to [defendant]."

 Plaintiffs introduced evidence showing Feng is the named

insured on the insurance policy for the vehicle. Plaintiffs also

introduced several invoices for the vehicle's maintenance that

Feng signed, and documents showing he was loaned a temporary

vehicle while the vehicle was under maintenance.

 Plaintiffs also filed a pleading dated October 10, 2014,

which they signed and entitled "Affidavit of Sale Agreement Between

Plaintiffs Chee Li and Feng Li" (Affidavit of Sale). The document

 5 A-0453-15T3
appears to be both a purported affidavit,4 asserting Chee and Feng

were the joint purchasers of the vehicle, and a form of contract

by which Chee purports to transfer to Feng all of her claims and

causes of action against defendant, and her rights under the

vehicle's warranty.

 The contract documents related to the financing and purchase

of the vehicle showed Chee was the purchaser, she solely applied

for the financing, and the certificate of title was in her name.

The retail installment contract listed Chee as the "buyer,"

included an acknowledgement that Chee was "purchasing the

vehicle," and was signed by Chee. The agreement included provisions

stating that Chee understood she had "no right to assign any of

[her] rights under" the contract, that the contract "described all

of the agreements with respect to the retail installment sale of

the [v]ehicle between [the] [s]eller and [Chee]," and that "all

prior agreements, whether oral or in writing, are superseded."

 The court considered the evidence submitted and determined

that Feng lacked standing to assert the causes of action in the

4
 The affidavit includes factual allegations plaintiffs suggest
are relevant here, but the affidavit is not competent evidence of
the alleged facts because it was not made upon oath or
verification. R. 1:4-4; Alan J. Cornblatt, P.A. v. Barow, 153 N.J.
218, 236-37 (1998) (explaining an affidavit must be confirmed by
oath or affirmation of the party making the statements).

 6 A-0453-15T3
complaint. The court found Feng "is not a real party in interest,"

or "a consumer as defined by the Lemon Law5 or [MMWA]." The court

rejected Feng's claim he was a co-owner of the vehicle and

determined Chee was the vehicle's sole owner because:

 [H]ere we have a certificate of title in the
 name of [Chee]; a purchase invoice in the name
 of [Chee]; a copy of a purchase order in the
 name of [Chee]; the temporary registration and
 license tag in [Chee's] name; the odometer
 disclosure statement, which is signed by
 [Chee] as transferee; the . . . BMW
 [f]inancial [s]ervices consumer credit
 application, which is in [Chee's] name; and
 there is no co-applicant; and a BMW
 [f]inancial [s]ervices motor vehicle retail
 installment contract, which memorializes the
 loan in the name of [Chee].

 The court rejected Feng's claim that by negotiating the

vehicle's purchase and making monthly payments to his wife, he had

standing. The court rejected Feng's reliance on the purported

Affidavit of Sale agreement, noting it was contrary to the language

of Chee's retail installment contract with defendant, which

precluded the assignment of any of her rights, including "the

5
 Plaintiffs' complaint did not allege a violation of New Jersey's
Lemon Law, N.J.S.A. 56:12-29 to -49. The court, however, liberally
read the complaint to allege a violation of the Lemon Law and
dismissed the claim. Feng does not challenge the court's ruling
on appeal and, in fact, affirmatively states that plaintiffs did
not allege a Lemon Law claim. We therefore do not address the
court's dismissal of the putative Lemon Law claim. An issue not
briefed on appeal is deemed waived. Jefferson Loan Co. v. Session,
397 N.J. Super. 520, 525 n.4 (App. Div. 2008); Zavodnick v. Leven,
340 N.J. Super. 94, 103 (App. Div. 2001).

 7 A-0453-15T3
right to pursue the remedy under the [] warranty." The court

concluded Feng was not the purchaser of the vehicle or a transferee

of the vehicle's title, and therefore he lacked standing to

prosecute the claims asserted in the complaint. The court entered

an August 17, 2015 order dismissing Feng's claims.

 Prior to the court's ruling, Chee's complaint was dismissed

pursuant to Rule 4:21A-4(f) for failure to appear for a court-

ordered mandatory non-binding arbitration. The court entered a

July 9, 2015 order dismissing Chee's claims. Ignoring the court's

order, Chee filed a notice of demand for a trial de novo on August

4, 2015, but the notice was returned by the court on August 12,

2015.

 Plaintiffs filed the present appeal challenging the May 28,

2014 discovery order, and the August 17, 2015 order dismissing the

complaint as to Feng. Plaintiffs did not appeal the court's July

9, 2015 order dismissing Chee's claims pursuant to Rule 4:21A-

4(f).6

6
 Plaintiffs' notice of appeal makes no reference to the July 9,
2015 order. R. 2:5-1(f)(3)(A). "[O]nly the orders designated in
the notice of appeal . . . are subject to the appeal process and
review." W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J.
Super. 455, 458 (App. Div. 2008). We therefore do not consider the
court's order dismissing Chee's claims. See, e.g., 30 River Court
East Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 473-74
(App. Div. 2006) (refusing to review orders not designated in the
notice of appeal).

 8 A-0453-15T3
 II.

 We first address plaintiffs' argument the court erred by

dismissing Feng's claims due to a lack of standing. We conduct a

de novo review of the orders dismissing claims for lack of

standing. Courier-Post v. Cty. of Camden, 413 N.J. Super. 372, 381

(App. Div. 2010) ("The issue of standing presents a legal question

subject to [an appellate court's] de novo review."). However, when

the court conducts an evidentiary hearing, we are bound by its

factual findings that are supported by substantial credible

evidence in the record. See Rova Farms Resort, Inc. v. Investors

Ins. Co. of Am., 65 N.J. 474, 483-84 (1974).

 The issue of standing involves a threshold determination of

the trial court's power to hear the case. N.J. Citizen Action v.

Riviera Motel Corp., 296 N.J. Super. 402, 410 (App. Div.), certif.

granted, 152 N.J. 13 (1997), appeal dismissed, 152 N.J. 361-62

(1998). We have adopted a "broad and liberal approach" on the

issue of standing by a party to maintain an action before the

court. Garden State Equal. v. Dow, 434 N.J. Super. 163, 197 (App.

Div.), certif. granted, 216 N.J. 1, stay denied, 216 N.J. 314

(2013). Generally, "a plaintiff must have a 'sufficient stake in

the outcome of the litigation, a real adverseness with respect to

the subject matter, and there must be a substantial likelihood

that the plaintiff will suffer harm in the event of an unfavorable

 9 A-0453-15T3
decision.'" Ibid. (quoting N.J. Citizen Action, supra, 296 N.J.

Super. at 409-10).

 Although our courts apply a broad approach to standing, it

is not automatic. EnviroFinance Grp., LLC v. Environmental Barrier

Co. LLC, 440 N.J. Super. 325, 340 (App. Div. 2015). "[A] litigant

usually has no standing to assert the rights of a third party."

Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 436 (App. Div.

2011), certif. denied, 210 N.J. 478 (2012); Jersey Shore Med.

Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144 (1980).

Moreover, a plaintiff has no standing to assert a statutory claim

where standing is not conferred or implied by the statute. See

Crusco v. Oakland Care Center Inc., 305 N.J. Super. 605, 614-15

(App. Div. 1997); Lascurain v. City of Newark, 349 N.J. Super.

251, 274-75 (App Div. 2002) (finding plaintiff lacked standing to

bring suit under the New Jersey Cemetery Act, N.J.S.A. 8A:1-1 to

-12-6, because the statute did not authorize actions by private

parties); Middlesex Cty. Bar Ass'n v. Parkin, 226 N.J. Super. 387,

392-93 (App. Div.) (finding plaintiff lacked standing to institute

proceeding to remove worker's compensation judges because the

constitutional and statutory authority for removal was vested in

the Governor and Commissioner of the Department of Labor), certif.

denied, 113 N.J. 380 (1988).

 10 A-0453-15T3
 Here, we first consider Feng's claim the court erred by

finding he lacked standing to prosecute the alleged violation of

the MMWA under count one of the complaint. "[T]he [MMWA] permits

'a consumer who is damaged by the failure of [a] . . . warrantor

. . . to comply with any obligation under . . . a written warranty

[or] implied warranty . . .' to sue warrantors for damages and

other relief including attorneys' fees." Ryan v. Am. Honda Motor

Corp., 186 N.J. 431, 434 (2006) (quoting 15 U.S.C.A. § 2310(d)(1),

(2)).

 "[T]o invoke the provisions of the Act, a plaintiff must fall

within one of [the following] three definitions of 'consumer'":

 (1) "a buyer (other than for purposes of
 resale) of any consumer product";

 (2) "any person to whom such product is
 transferred during the duration of an implied
 or written warranty . . . applicable to the
 product"; or

 (3) "any other person who is entitled by the
 terms of such warranty . . . or under
 applicable State law to enforce against the
 warrantor . . . the obligations of the
 warranty."

 [Ibid. (quoting 15 U.S.C.A. § 2301(3).]

 Feng contends he has standing to prosecute his MMWA claim

because he qualifies as a consumer within each of the three

statutory categories of the MMWA. He claims the court erred by

holding otherwise. We disagree.

 11 A-0453-15T3
 The evidence supports the court's determination Feng was not

a buyer of the vehicle and thus did not qualify as a category one

consumer. Feng acknowledges he could not buy the vehicle because

he was not financially able to do so. As a result, he arranged for

Chee to purchase the vehicle. She obtained the financing, the

retail installment agreement identifies her as the buyer, and the

title of the vehicle was issued to her alone.

 There is also no evidence supporting Feng's claim he qualifies

as a category two consumer as a transferee of the vehicle during

the warranty period. 15 U.S.C.A. § 2301(3). In order to qualify

as a category two consumer, Feng is required to establish he was

a "person to whom [the vehicle was] transferred during the duration

of an implied or written warranty." Ibid.

 Here, the title to the vehicle remained at all times in Chee's

name, there was no evidence Chee transferred any legal right to

the possession or use of the vehicle to Feng, and Chee was

prohibited by the retail installment contract from transferring

the vehicle without defendant's authorization, which Feng sought,

but which defendant denied.

 We reject Feng's argument that the Affidavit of Sale

demonstrates a transfer of the vehicle from Chee to Feng.

Apparently aware that a transfer of the vehicle is prohibited by

Chee's retail installment contract and would constitute a default

 12 A-0453-15T3
under the agreement, the affidavit memorializes a putative sale

only of Chee's "[c]ontract[] warranty, [c]laims and [c]auses of

[a]ction" against defendant and others. The affidavit, to the

extent it also constitutes a contract, simply does not transfer

to Feng any legal right to the vehicle.

 We also reject Feng's argument he was a transferee within the

meaning of the MMWA based on his exclusive use of the vehicle

following its purchase. His argument is unencumbered by citation

to any legal authority supporting the notion that a transfer

pursuant to section 2301(3) of the MMWA occurs when a vehicle

owner permits another to use it. In support of his position, Feng

relies only upon the court's analysis of category three consumers

in Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 524-27 (7th

Cir. 2003), which has no application to Feng's contention he

qualifies as a category two consumer.

 In Voelker, the court rejected the plaintiff's claim he was

a category two consumer, but not based on the lack of a transfer

of the vehicle. Id. at 524. The court considered whether

plaintiff's entry into the lease for the vehicle with the lessor

was a transfer of the vehicle under section 2301(3) of the MMWA.

Ibid. The court determined the plaintiff was not a category two

consumer, because the transfer by way of the lease did not occur

"during the duration of" the warranty as required by the statute.

 13 A-0453-15T3
Ibid. Feng does not claim to be a lessee and, thus, Voelker does

not support his contention he is a category two consumer.

 In Ryan v. Am. Honda Motor Corp., 376 N.J. Super. 185, 187-

89 (App. Div. 2005), aff'd as modified, 186 N.J. 431 (2006), we

considered whether a lessee of a motor vehicle qualified as a

category two consumer under the MMWA. We explained there was a

conflict among the courts addressing the issue, with some courts

determining a lessee could not qualify as a second category

consumer because the statute required a transfer involving a sale

and passing of title to the transferee. Id. at 193-94; see also

DiCintio v. DaimlerChrysler Corp., 768 N.E.2d 1121, 1126-27

(2002). We also explained other courts have held that if warranties

are issued initially as part of a sale, a subsequent lessee of the

vehicle qualifies as a category two consumer if the lessee leases

and takes possession of the vehicle during the duration of the

warranties. Id. at 197-98; see, e.g., Voelker, supra, 353 F.3d at

524; Parrot v. Daimier-Chrysler, 108 P.3d 922 (App. 2005); Mangold

v. Nissan N. Am., Inc., 809 N.E.2d 251 (2004).

 We reasoned that the latter cases represented the more

accurate interpretation of 15 U.S.C.A. § 2301(3), and concluded

lessees could qualify as category two consumers. Id. at 197-99.

In a per curiam decision on the defendants' appeal, the Supreme

Court stated it would not address our conclusion concerning the

 14 A-0453-15T3
qualifications for category two consumers, and affirmed solely on

the basis of our separate determination that the plaintiff

qualified as a category three consumer. Ryan, supra, 186 N.J. at

434-35. Thus, the issue of whether a lessee can qualify as a second

category consumer has not been resolved by our Court.7

 We need not address or again resolve the precise issue we

addressed in Ryan, supra, 376 N.J. Super. at 196-99, and the court

addressed in Voelker, supra, 353 F.3d at 524, because in those

cases and the others that have addressed the issue, entry into a

lease has been uniformly construed as a transfer of the vehicle

under section 2301(3) of the MMWA. 15 U.S.C.A. § 2301(3). Thus,

those cases required only a determination as to whether the

transfer of the vehicle otherwise qualified the lessee as a

category two consumer.

 In contrast, Feng is not a category two consumer because he

failed to establish Chee transferred any legally enforceable right

to the use or possession of the vehicle. Nor could she have

transferred those rights because the retail installment agreement

7
 As noted in Justice Rivera-Soto's dissent, it is unclear whether
the Court's decision to affirm based solely on our determination
that the plaintiff qualified as a category three consumer was
intended as a rejection of our determination a lessee can be a
category two consumer. Justice Rivera-Soto stated that he
concurred with the majority to the extent it "disagree[d] with the
Appellate Division and conclude[d]" the plaintiff was not a
category two consumer. Ryan, supra, 186 N.J. at 437.

 15 A-0453-15T3
prohibits the assignment of any of her rights to a third-party,

including her right to the vehicle's use, possession or ownership.

 Lacking any evidence Chee granted Feng any legally

enforceable right or interest in the vehicle, we are satisfied the

court correctly determined he was not a category two consumer. We

reject Feng's contention that Chee's decision to permit him to use

the vehicle that she had purchased, without more, constitutes a

transfer under section 2301(3) of the MMWA. No legal precedent

supports the contention, and acceptance of it would lead to the

absurd conclusion that anytime the owner of a vehicle loans it to

another, the user becomes a consumer under the MMWA. We find no

support in law or logic for such a result.

 We next consider whether the court correctly determined

plaintiff was not a category three consumer under the MMWA. To

qualify as a category three consumer, Feng was required to

establish he "is entitled by the terms of such warranty . . . or

under applicable State law to enforce against the warrantor . . .

the obligations of the warranty." 15 U.S.C.A. § 2301(3). Thus, the

inquiry is dependent in part upon Feng's state law claims for

breach of express (count two) and implied (count five) warranties,

which, as explained further below, are not viable claims under the

facts presented here.

 16 A-0453-15T3
 An automobile lessee that is assigned rights to a manufacturer

warranty can qualify as a third category consumer under the MMWA.

Ryan, supra, 186 N.J. 435-36. A lessee, "as the assignee of the

dealer's warranty, is entitled to enforce the warranty under New

Jersey law." Id. at 436 (citing Miller Auto Leasing Co. v.

Weinstein, 189 N.J. Super. 543, 546 (Law Div. 1983), aff'd o.b.,

193 N.J. Super. 328 (App. Div.), certif. denied, 97 N.J. 676

(1984)).

 Thus, an assignee of a buyer's rights to a warranty agreement,

though not the actual "buyer" within the statutory definition, may

nevertheless enforce the warranty agreement in limited

circumstances. Ibid. Plaintiffs' Affidavit of Sale, however, did

not result in an enforceable assignment to Feng of Chee's rights

under the warranties because the retail installment contract

barred Chee's assignment of her contractual rights, Somerset

Orthopedic Assoc., P.A. v. Horizon Blue Cross and Blue Shield of

N.J., 345 N.J. Super. 410, 415 (App. Div. 2001) (finding specific

and express anti-assignment clauses are generally upheld), and

Feng provided no other evidence of a valid assignment of Chee's

warranty rights.

 Nevertheless, Feng argues he is entitled to assert the

warranty claims as a third-party beneficiary of the retail

installment contract. We disagree. A non-party cannot enforce a

 17 A-0453-15T3
contract unless it "clearly appear[s] that the contract was made

by the parties with the intention to benefit the third party" and

that "the parties to the contract intended to confer upon him the

right to enforce it." First Nat'l State Bank v Carlyle House,

Inc., 102 N.J. Super. 300, 322 (Ch. Div. 1968), aff'd o.b., 107

N.J. Super. 389 (App. Div. 1969), certif. denied, 55 N.J. 316

(1970). "The contractual intent to recognize a right to performance

in the third person is the key." Broadway Maint. Corp. v. Rutgers,

90 N.J. 253, 259 (1982).

 "When a court determines the existence of 'third-party

beneficiary' status, the inquiry 'focuses on whether the parties

to the contract intended others to benefit from the existence of

the contract, or whether the benefit so derived arises merely as

an unintended incident of the agreement.'" Ross v. Lowitz, 222

N.J. 494, 513 (2015) (quoting Broadway Maint., supra, 90 N.J. at

259). The rights of a third party beneficiary are determined by

 the intention of the parties who actually made
 the contract. They are the persons who agree
 upon the promises, the covenants, the
 guarantees; they are the persons who create
 the rights and obligations which flow from the
 contract. . . . Thus, the real test is whether
 the contracting parties intended that a third
 party should receive a benefit which might be
 enforced in the courts; and the fact that such
 a benefit exists, or that the third party is
 named, is merely evidence of this intention.

 18 A-0453-15T3
 [Ibid. (quoting Borough of Brooklawn v.
 Brooklawn Hous. Corp., 124 N.J.L. 73, 76-77
 (E. & A. 1940)).]

Where there is "no intent to recognize the third party's right to

contract performance," the third party is an incidental

beneficiary, having no contractual standing. Ibid.

 We are satisfied the record does not support Feng's claim he

is a third-party beneficiary under the retail installment

contract. The dealership may have been aware Feng would use the

vehicle, but the record is devoid of any evidence showing the

dealership or defendant intended "to recognize" a right in Feng

to enforce performance of the contract's terms. Ibid. Therefore,

Feng was not a third-party beneficiary under the retail installment

contract.

 Feng does not articulate any viable state law claim that

would otherwise qualify him as a category three consumer under the

MMWA. Although we have recognized that the MMWA effectively removes

"the requirement of privity of contract between the consumer and

the warrantor," Ventura v. Ford Motor Corp., 180 N.J. Super. 45,

59 (App. Div. 1981), the absence of privity in this case would at

most allow Feng to pursue personal injury claims, not economic

loss damages, as a result of the alleged breach of express or

implied warranties. See Spring Motors Distribs. v. Ford Motor Co.,

98 N.J. 555 (1985).

 19 A-0453-15T3
 A buyer seeking economic loss damages resulting from the

purchase of defective goods can maintain an action for breach of

express or implied warranties pursuant to the Uniform Commercial

Code (UCC), N.J.S.A. 12A:1:101 to 12-26. See Alloway v. Gen. Marine

Indus., L.P., 149 N.J. 620, 627-30 (1997). The UCC "generally

applies to parties in privity," but our courts have construed the

statute to find that under certain circumstances, the absence of

privity is not a bar to maintain such actions. Spring Motors,

supra, 98 N.J. at 582. For example, the lack of vertical privity

amongst parties in a distributive chain, i.e., a supplier,

manufacturer, retailer, and ultimate buyer, does not preclude the

extension of the supplier's warranties made to the purchaser. Id.

at 583-84.

 However, Feng's issue is one of "horizontal non-privity,"

or "the relationship between the retailer and someone, other than

the buyer, who has used or consumed the goods." Id. at 584. A

horizontal non-privity plaintiff refers to someone such as the

buyer's spouse or child. Ibid. The UCC extends warranties

horizontally to "any natural person who is in the family or

household of [the] buyer or who is a guest in his home if it is

reasonable to expect that such person may use, consume, or be

affected by the goods and who is injured in person by breach of

the warranty." N.J.S.A. 12A:2-318 (emphasis added). Thus, the lack

 20 A-0453-15T3
of privity in this case would only allow Feng to pursue personal

injury claims, not purely economic loss damages.8

 In sum, Feng failed to demonstrate he is a category three

consumer under section 2301(3) of the MMWA, and therefore lacked

standing to prosecute violations of the MMWA under count one of

the complaint or the claims for breach of express and implied

warranty under counts two and five.

 Moreover, because Feng was neither party to an enforceable

contract providing for the warranties or entitled to assert a

claim as a third party beneficiary, the court correctly dismissed

his claim under count three for breach of the covenant of good

faith and fair dealing.9 See Cumberland Farms, Inc. v. New Jersey

Dep't of Envtl. Prot., 447 N.J. Super. 423, 443 (App. Div. 2016)

8
 We also reject Feng's attempt to ignore his lack of third-party
beneficiary status by claiming he is the "true owner" of the
vehicle. Feng's reliance on Verriest v. Ina Underwriters Ins. Co.,
142 N.J. 401, 408 (1995), and Am. Hardware Mut. Ins. Co. v. Muller,
98 N.J. Super. 119, 129 (Ch. Div. 1967), aff'd o.b., 103 N.J.
Super. 9 (App. Div.), certif. denied, 53 N.J. 85 (1968), is
misplaced. Those cases addressed the issue of vehicle ownership
for insurance purposes under the terms of insurance contracts
different than the terms of the retail installment contract at
issue here.
9
 Plaintiff's only remaining claim, asserted in count four, alleged
defendant's refusal to honor the warranty agreement violated the
the Consumer Fraud Act, (CFA), N.J.S.A. 56:8-1 to -20. The court's
dismissal of the CFA claim is not challenged in plaintiff's brief
on appeal, and therefore Feng's right to challenge the dismissal
is waived. Jefferson Loan Co., supra, 397 N.J. Super. at 525 n.4;
Zavodnick, supra, 340 N.J. Super. at 103.

 21 A-0453-15T3
(finding there can be no breach of the covenant of good faith and

fair dealing in the absence of a contract), certif. denied, __

N.J. __ (2017).

 We also reject Feng's argument that defendant "is equitabl[y]

estoppe[d]" from claiming Feng lacked standing by inducing Chee

to sign all of the documents related to the vehicles purchase. To

establish equitable estoppel, Feng was required to prove that

defendant "engaged in conduct, either intentionally or under

circumstances that induced reliance." Knorr v. Smeal, 178 N.J.

169, 178 (2003); accord Berg v. Christie, 225 N.J. 245, 279 (2016).

Feng must also establish defendant made "a knowing and intentional

misrepresentation." O'Malley v. Dep't of Energy, 109 N.J. 309, 317

(1987); accord Berg, supra, 225 N.J. at 279.

 Feng presented no evidence and made no allegation that

defendant made misrepresentations related to the purchase of the

vehicle. The evidence showed Feng was advised he did not qualify

for the financing necessary to purchase the vehicle and, in

response, his wife Chee purchased the vehicle instead. Contrary

to Feng's assertion, there was no evidence supporting his equitable

estoppel claim.

 III.

 Because we affirm the court's dismissal of Feng's complaint,

it is unnecessary to address Feng's challenge to the May 28, 2015

 22 A-0453-15T3
order granting defendant's motion for a protective order limiting

plaintiffs' written discovery demands. See, e.g., Lonegan v.

State, 341 N.J. Super. 465, 481 (App. Div. 2001) (appeal of refusal

to grant preliminary restraints mooted by substantive

determination of merits on appeal), aff'd, 176 N.J. 2 (2003). In

any event, we make the following comments.

 The court found plaintiffs' 318 interrogatories and fifty-

three document demands were excessive, and granted defendant's

motion for a protective order, reasoning that ruling otherwise

"would cause defendant to suffer an undue burden." We do not find,

and plaintiffs have not established, the court abused its

discretion in its well-reasoned decision to limit plaintiffs'

demands. See Spinks v. Twp. of Clinton, 402 N.J. Super. 454, 459

(App. Div. 2008) (explaining an appellate court "defer[s] to the

'trial court's disposition of discovery matters including the

formulation of protective orders'" (quoting Payton v. N.J. Tpk.

Auth., 148 N.J. 524, 559 (1997))).

 Last, we decline to address plaintiffs' arguments concerning

the administrative dismissal of Chee from the case based on her

failure to appear for the court ordered arbitration. The court's

July 9, 2015 order dismissing Chee's complaint pursuant to Rule

4:21A-4(f) was not listed in plaintiffs' notice of appeal. See,

e.g., 30 River Court, supra, 383 N.J. Super. at 473-74 (refusing

 23 A-0453-15T3
to review orders not included in the notice of appeal pursuant to

R. 2:5-1(f)(3)(i)). Moreover, plaintiffs do not argue the court's

dismissal order was entered in error. Plaintiffs challenge only

the validity of a letter sent by the court staff to Chee rejecting

her request for a trial de novo. The letter is not an order or

judgment properly subject of the appellate review. R. 2:2-3.

 Affirmed.

 24 A-0453-15T3